Accompanying the record sent upon appeal to this court, is the following:
(448) CASE AGREED
"On the 10th day of February, 1872, the defendants executed to the plaintiff the following sealed instrument:
"$2,000.00.
"On the first day of February, 1873, we or either of us promise to pay to the order of Webb Roundtree, the sum of two thousand dollars with interest.
 "Wilson, N.C. Feb. 10th, 1872. (Signed) "B. H. TYSON, [SEAL.] W. M. RAY, [SEAL.] MRS. S. V. WHITEHEAD, [SEAL.]"
At the same time the defendants executed to the plaintiff two other sealed instruments in exactly the same terms as the one above mentioned, except that they were each for the payment of fifteen hundred dollars and expressed to be for value received. These bonds have not been paid.
At the time of executing said instruments the defendant Mrs. Whitehead was, and still is a feme covert living separate and apart from her husband; but without any divorcee or deed of separation. She was married to her present husband, Sept. 17th, 1875, and on the day previous to her said marriage she and her intended husband entered into a contract under seal a copy of which is hereto appended.
At the time of said marriage, the defendant was and she still is the owner of considerable real estate. Her husband at the time of the execution by her of said sealed instruments, and making of this contract with the plaintiff, did not assent thereto and the feme defendant executed said instruments as surety for the defendant Tyson at his request and the request of the defendant Gay, and was not personally benefited thereby and did not expect any personal benefit.
The defendants Gay and Tyson were greatly embarrassed at the time and the plaintiff would not have credited them but for the name (449) of the feme defendant; but she was not aware that her name was all that gave value to the paper in the estimation of the plaintiff. The defendants Gay and Tyson are now insolvent. *Page 341 
There is and always has been an acting trustee under the provisions of the aforesaid marriage contract.
Subsequent to the execution of the bonds in suit, the defendant Gay made the following mortgages and trust deeds to secure the payment of the same: One mortgage recorded in the Register's office of Wilson County conveying the interest of Gay and his wife to certain trustees therein named, in one house and lot in the town of Wilson; one gin house and lot; one steam engine; two cotton gins; one cotton press and fixtures; one still lot near said town; turpentine and still fixtures. A mortgage made to B. H. Connor trustee, recorded in the Register's office, of Wilson County, executed by the defendant Gay, and his partner J. D. Gay, conveying all their interest in all the notes, accounts and mortgages, and other choses in action, in the firm of Gay, Tyson Co. These securities are not sufficient to discharge in full the claims of the plaintiff.
The case is to be tried, as if the husband of the feme defendant had been made a party defendant.
At the time of the execution of said bonds, the feme defendant resided upon her said real estate, and exercised as much control over the same for farming purposes as if she had been a feme sole; employing laborers to cultivate the same, in her own name; selling the produce and receiving the proceeds; and applying the same to her own use.
If, upon the foregoing statement of facts, the court should be of the opinion with the plaintiff, then the plaintiff is to have judgment for the full amount of said bonds, and interest, and the feme defendant is to be subrogated to all the securities given by her co-defendants to the plaintiff.
If the court shall be of opinion that the feme defendant is not (450) liable, then judgment is to be rendered accordingly, and the action dismissed as to her.
The following is a copy of the marriage contract hereinbefore referred to:
"NORTH CAROLINA,
Pitt County.
"This indenture, made and entered into, this 16th day of September, A.D. 1865, by and between William Whitehead, of the first part, S. Virginia Atkinson, of the second, and Edward C. Yellowley, of the third part, all of the said parties being of the county of Pitt, and State of North Carolina, witnesseth: That whereas a marriage is soon to be solemnized between the said William Whitehead and the said S. Virginia Atkinson, and the said S. Virginia Atkinson is possessed of and entitled to a large estate of personalty which she is desirous of having *Page 342 
settled upon herself, so as to be free and clear from all control of said William Whitehead, or from all liability for his debts or contracts, and so as to have the ultimate disposition of said property, as well as such real estate as she may be seized of, she, the said S. Virginia Atkinson, by will, or paper writing in the nature of a will, by deed, bill of sale or otherwise:
"Now therefore, for and in consideration of the premises, and for the sum of one dollar to her the said S. Virginia Atkinson in hand paid by the said Edward C. Yellowley, she the said S. Virginia Atkinson, by and with the full knowledge and consent of the said William Whitehead, testified to by his being a party to these presents, does bargain and sell unto the said Edward C. Yellowley, all of the personal estate of which she the said S. Virginia Atkinson is either possessed or entitled to; consisting in part of railroad stock, bank stock, county bonds, household and kitchen furniture, farming implements, horses, mules, cattle, and buggies, and all other riding vehicles, etc., etc., to (451) have and to hold unto him the said Edward C. Yellowley, his executors and assigns forever.
"In trust nevertheless, that he the said Edward C. Yellowley shall hold the same for the sole and special use and benefit and behoof of the said S. Virginia Atkinson, free and clear from all control of the said William Whitehead or liability for his debts or contracts during her coverture with said Whitehead and for the use of such person or persons as she the said S. Virginia Atkinson may bequeath the same to, by any paper writing in the nature of a will, in the event of the death of the said S. Virginia Atkinson, the said William Whitehead her surviving. And the said William Whitehead doth hereby consent, to the foregoing disposition of the estate aforesaid and doth covenant and agree that the said S. Virginia Atkinson shall have full power and authority at any time during the coverture to make, sign and seal any and all paper writings in the nature of a will for the disposition of the estate after her death, provided the same shall be attested by two credible witnesses; and that she shall have the further power to sell, exchange or otherwise dispose of the same or any part thereof during coverture without hindrance or interference on his part. And it is expressly agreed and stipulated by and between the parties hereto that the said Edward C. Yellowley shall in no manner or case be held responsible for the estate hereby conveyed to him or for any part thereof, until the same shall have been specially delivered into his possession by the said S. Virginia Atkinson; and it is further agreed that the said William Whitehead and S. Virginia Atkinson may at any time hereafter substitute by their deed the appointment of any other trustee in the place of the said Edward C. Yellowley; and it is further stipulated and agreed by and *Page 343 
between the parties hereto, that any and all estate to which the said S. Virginia Atkinson may at any future time become entitled by the death of any relation shall be governed by the settlement herein made.
"In testimony whereof the parties have hereunto set their (452) hands and seals the day and date above written.
 (Signed) "WILLIAM WHITEHEAD, [SEAL.] S. V. ATKINSON. [SEAL.]
"Signed, sealed and delivered in the presence of
 JAS. MURRAY, B. S. ATKINSON."
Upon the hearing of the case agreed, the court rendered judgment in favor of the defendant, and upon motion, the action as to her, was dismissed with cost. From this judgment the plaintiff appealed.
1. At common law a wife could not contract, and the question is whether the Constitution, Article X, Sec. 6, has changed the rule. The common law disability was for her protection, as she was in contemplation of law, subpotestate viri. 1st Bish. Mar. Wom., Sec. 39; Draper v. Jordan, 58 N.C. at bottom of page 177; GIBSON, C.J., in Thomas v. Folwell, 2 Whart., 11 (S. c. in Am. Notes to Hulme v. Tenant, 1st White and T. Leading Cases, Eq., at page 537); and consequently the rule, that statutes in derogation of the common law, are to be construed strictly, here applies with all its force. Draper v. Jordan, 58 N.C. at pages 176-77. HOAR, J., in Edwards v.Stevens, 3 Allen, 315; Brookings v. White, 49 Maine, 479 (S. c., 2 Bish. Mar. Wom., note 2 to Sec. 175); Brown v. Fifield, 4 Mich. 322; Hartley v.Ferrell, 9 Fla. 374, 179 (S. c., 2 Bish. Mar. Wom., Sec. 198, note); LOWRIE, C.J., in Walker v. Reamy, 12 cases, 410-414; S. c., 2 Bish. Mar. Wom., Sec. 24.
2. The local position of the constitutional provision shows that it was intended to be a disabling, and not an enabling, statute, an exemption from debt; not a power to contract it. It occurs midway (453) a chapter of "exemptions." And, in this connection, see remark of PEARSON, C.J., in Harris v. Harris, 42 N.C. at pages 122-23. We know from the history of the times that the object of these exemption laws was to save something from the wreck of fortunes at the close of the war, an object which would have been little advanced by increasing facilities for the wife to denude herself of her estate. *Page 344 
3. The supposed power of the wife to contract can only be the outgrowth of her right to hold and dispose of property, and can never rise above its source, the jus disponendi, either in extent or mode of exercise, and here, as the Constitution requires her direct conveyance inter vivos to have the sanction of her husband, her indirect conveyance by way of charge, must have the same sanction. As tending to confirm this view, see RODMAN, J., inHarris v. Jenkins, 72 N.C. at middle of page 185; the part in italics.
And as her contract can only be effectual as "an appointment pro tanto
out of her separate estate," 2 Story Eq., Jur. Secs. 1399, 1400, 1401, no contract is binding which is not executed with all the formalities requisite to such an appointment, i.e., conveyance. When realty is the separate estate, not even in England could it be charged merely by the wife's general engagements. The husband here has to join in the conveyance of the wife's separate estate in realty, and she must be privily examined. Bat. Rev., Chap. 35, Sec. 14; Newlin v. Freeman, 39 N.C. 312.
4. But the wife can only, by express words, charge even her own personalty. Draper v. Jordan, 58 N.C. 175, and this rule has been affirmed under the new Constitution. Harris v. Jenkins, 72 N.C. at page 185.
5. As Whitehead and wife were married before 1868, their property rights are not changed by the statute, which must have only a prospective operation.
(454) 6. The profits of realty are personalty, (RUFFIN, C.J., at page 113 of 7 Ired. Eq.,) and so go to the trustee under the marriage contract.
7. The wife's living separate from her husband, makes no difference in our case. Chitty on Contracts, 177.
8. The dictum in Withers v. Sparrow, 66 N.C. 129, does not conflict, for
a. It applied to a South Carolina estate, and is governed by S.C. law.
b. The trustee there concurred.
c. The contract was for the benefit of the married woman's estate.
d. The New York law, which is the basis of the dictum, does not recognize as binding the general engagements of the wife, but only such as were charged specifically on the separate estate. Tate v. Dederer,18 N.Y., 265, 22 N.Y. 250, Am. notes to Hulme v. Tenant, 1 Ld. Cas. Eq., from page 531 to bottom of 533.
e. In England the object of the separate estate is the maintenance of the wife, (PEARSON, J., in Harris v. Harris, 42 N.C. at first of page 121 and last of 124,) and of course the power to change cannot be extended beyond the objects of its creation and made the means of impoverishing the wife. *Page 345 
For the reasons given in Pippin v. Wesson, ante, 437, the note sued on is invalid as to Mrs. Whitehead. And for the additional reason, that her separate estate was not created by legislation, but by a deed of settlement, executed in 1865, and the contract does not refer to or charge the debt upon her separate estate, and it was not made with the consent either of her husband, or of the trustee in the deed of settlement.
The case states that she is living separate from her husband, and is in the exclusive management of her separate estate, but it states no facts to bring her within either Section 23 or 24, of the marriage (455) act. (Bat. Rev., Chap. 69.) It does not appear that her husband has abandoned her, and there is no deed of separation.
PER CURIAM. Judgment affirmed.
Cited: Hall v. Short, 81 N.C. 278; Flaum v. Wallace, 103 N.C. 307;Sanderlin v. Sanderlin, 122 N.C. 3.