374　　　　　　　　　SUPREME COURT.

DANIEL HARTLEY, APPELLANT, VS. LAWRENCE J. FERRELL, APPELLEE.

1. The rule that a plaintiff in ejectment must rely upon the strength of his own title, and not upon the weakness of his adversary's title, is not to be under-stood as requiring that he shall be compelled, in the first instance, to trace his title back to the original grantor ; but only that he shall exhibit so much as will put the defendant to the support of his possession, by a title superior to one·of a mere naked possession.

2. A plaintiff in ejectment is required, in the first instance, only to show a legal title, and a right of entry under it, in order to drive the defendant to the exhibition of a paramount title.

3. A purchaser at a Sheriff's sale has only to show his deed, the execution under which the land was sold, and prove title in the defendant in execution, or *possession since the rendition of the judgment ;* and the *onus probandi* is cast on the opposite party.

4. The fourth section of the Act of 1845, known as the " Married Woman's Law," is not in conflict with the *proviso* contained in the Act of 1835, which requires the private examination of the wife, when about to convey her separate real estate ; and to be valid against her, the deed must be executed conformably to the requirements of that proviso.

5. Where in such case there was a private examination, but the written acknowledgment of the execution of the deed stated that it was done with " the intent of relinquishing her *right of dower ;* " these words will be rejected as surplusage, and the deed be held to be properly executed.

This case was decided at Tallahassee.

Appeal from Madison Circuit Court.

This was an action of ejectment instituted by the defendant in error to recover of the plaintiff in error the premises described in the declaration. The chain of title set forth by the plaintiff below was : first, a deed from the Sheriff of Madison County for the larger portion of said lands, and a United States patent, to one Sarah C. Scott ; second, a deed executed by Sarah C. Scott and husband, conveying all of said lands to Lavinia C. Sellars ; third, a deed from Lavinia C. Sellars and her husband, John W. Sellars, conveying said lands to the plaintiff below, Lawrence J. Ferrell. The other facts in the case are fully stated in the opinion of the Court.

*William M. Peacock* for appellant.

*Pope & McDonald* for appellee.

DuPONT, C. J., delivered the opinion of the Court.

This was an action of ejectment, instituted in the Circuit Court of Madison County, by the defendant in error, to recover of the plaintiff in error the possession of certain premises described and set forth in the declaration.

At the trial of the cause, the plaintiff below offered in evidence, as a link in the chair of title, a Sheriff's deed for a portion of the land in controversy, which had been made in virtue of a judicial sale of the premises, as the property of one Holland, who was in possession at the time of the sale. The defendant's counsel objected to the introduction of this deed as evidence, unless it should be further shown that Holland, the defendant in the execution under which the sale was made, also had title in himself. The Court overruled the objection, and permitted the deed to go before the jury, unaccompanied by any proof of title in Holland, other than his having been in possession at the time of the sale. To this ruling the counsel of defendant excepted, and this constitutes the error first assigned.

It is undoubtedly true, as insisted by the counsel for appellant, that in an action of ejectment, the lessor of the plaintiff must recover upon the strength of his own title, and not through the weakness of the defendant's title. This is a canon of the common law, and its authority has never been questioned, however its application has been misunderstood. The application of this principle is not to be understood as requiring that a plaintiff in making out his title shall be compelled in the first instance to trace the chain back to the first grantor, but only that he shall exhibit so much as will put the

defendant to the support of his possession, by a title supe-
rior to one of a mere naked possession. According to the
bill of exception, it seems that the defendant made no ex-
hibition of paper title, but was content to rely upon mere
naked possession. It is, however, expressly stated, that
Holland, the defendant in the execution under which the
land was sold, and by virtue of which sale the Sheriff's deed
was made, was in the actual possession of the premises at the
time of the sale, and consequently his possession must have
been anterior to that of the defendant, and his title by pos-
session also superior to the defendant's title by possession.
Now it was only necessary for the plaintiff, in the first in-
stance, to trace back to that superior title, and as the defen-
dant failed to exhibit a title paramount to that, we think
that he had done enough to permit him to go to the jury.

The citation in the brief from 2 Greenleaf on Evidence,
§316, is not applicable to the point raised by the exception.
That authority only maintains, that where the plaintiff
claims under a Sheriff's deed, and the action is against a
*stranger* to the execution by virtue of which the premises
were sold, it is incumbent on the plaintiff, in order to sustain
the deed, to make due proof of the *judgment and execution.*
This is not the point raised by the exception, and indeed we
find no intimation in the record that the judgment and ex-
ecution had not been fully proved.

The citation from Conference (N. C.) Reports, 527, would
seem to sustain the exception taken in this case; but that is
a very old case, and there is no citation of authority in the
opinion, which is embraced in the compass of six or eight
lines. In opposition to this authority, is the more recent case
of "Whately vs. Newsom," (10 Geo. R. 74,) in which it is
held that "a purchaser at a Sheriff's sale has only to show
his deed, the execution under which the land was sold, and
prove title in the defendant, *or possession since the rendition*

*.of the judgment*, and the *onus probandi* is cast upon the opposite party." And this decision is in perfect consonance with the general rule that a plaintiff in ejectment is required, in the first instance, only to show a legal title and a right of entry under it, in order to drive the defendant to the exhibition of a paramount title. Cooper vs. Galbraith, 3 Wash. C. C. R. 546; Tillery vs. Wilson, 1 Overt. R. 236; Wood vs. West, 1 Black. R. 133; West vs. Pine, 4 Wash. C. C. R. 691; Riddle vs. Murphy, 7 S. & R. R. 230.

The second error assigned is in the following words, viz: "In ruling the deed of Lavinia Sellars and her husband to be sufficient, and valid, and good, without the private examination of the said woman, and allowing it to be read to the jury as evidence of title."

The deed alluded to in this assignment is embraced in the record, and is sufficiently referred to in the bill of exception as matter of evidence adduced on the trial. We shall have occasion to refer to this deed more particularly hereafter.

It was argued for the defendant below that the premises embraced in the deed being the separate estate of the wife, she could not divest herself of the title but by submitting to a private examination apart from her husband, and that the act of 1845, commonly designated the "married woman's law," did not dispense with this formality. In order to have a proper comprehension of the point, we will recite the portions of the respective statutes bearing on the subject. The act of 1835, (Thomp. Dig. 179,) provides as follows—"Any married woman, owning real estate of inheritance in this State, may sell, convey, transfer or mortgage the same, or any part thereof in the same manner as she might do, if she were sole and unmarried: *Provided*, the husband of said married woman join in such sale, conveyance, transfer or mortgage, and the same be made and authenticated in the manner prescribed by the several acts in force regulating

conveyances of real estate, and the recording and authenticating the same: *And provided also*, that such married woman shall acknowledge, on a separate or private examination, before the officer or other person appointed by law to take her acknowledgment of her execution of any such sale, conveyance, transfer or mortgage, separate and apart from her said husband, that she executed the same, freely, and without any fear or compulsion of her said husband."

It is worthy to be noted as a part of the judicial history of the State, that down to the date of this enactment, there was no mode provided by statute for the conveyance or transfer of the real estate of a *feme covert*, and they were consequently confined to the common law proceeding of *fine and recovery*, which proceeding not having been brought into use, and a large amount of such estates having been conveyed by the mere deed of the husband, or his simply joining with his wife, the second section of the same act was made to operate retroactively upon all such conveyances, and they were declared to be valid in law. For the benefits which have accrued from this act, the country is indebted to the Hon. B. A. Putnam, the present Judge of the Eastern Judicial Circuit.

It will be seen that by the provisions of this act, the deed of a *feme covert* for the conveyance of real estate of inheritance was of no avail, unless the execution of the same were acknowledged by her, upon a private examination, separate and apart from her husband. So stood the law until the passage of the act of 1845, commonly called the "married woman's law." The 4th section of that act reads as follows, viz:

"The husband and wife shall join in all sales, transfers and conveyances of the property of the wife; and the real estate of the wife shall only be conveyed by the joint deed of the husband and wife, duly attested, authenticated and

admitted to record, according to the laws of Florida regulating conveyances of real property." (Thomp. Dig. 221.)

Since the passage of this latter act, the question has been mooted by the bar, but never authoritatively decided, whether the *private examination* of the *feme*, requiredly by the provisions of the former act, have not been dispensed with by the terms of this act? In support of the affirmative, it has been suggested that the *conformity* to the requisitions of the former act, which is directed by this act, reaches only to the " attestation, authentication and recordation ;" and that the requirement was not designed to embrace the " execution " of the deed. We have given to this question the most patient investigation, and are constrained · to hold that the section of the act of 1845, now under consideration, does not in any manner conflict with the proviso contained in the Act of 1835, which requires the private examination and acknowledgment of the wife. To come to a different conclusion as to the intention of the Legislature, would be to impute to that body a gross act of stultification, in this, that while professing to enlarge the protection to be given to the rights of married women, they had, indeed, deprived them of their most valuable safe-guard, to wit : protection against the undue influence of their husbands.· But this interpretation of the act is not dependent alone upon its *spirit*; we think that the very *words* of the act are sufficiently comprehensive .to indicate with certainty the intention of the Legislature. The words of this section are : " and the real estate of the wife shall only be conveyed by the ·joint deed of the husband and wife, *duly attested, authenticated and admitted to record, according to the laws of Florida regulating conveyances of real property.*" The question in this case is predicated upon the omission in this connection of the word " executed," but we think that its force and effect is fully comprehended in the word " authen-

ticated," especially as applied to the deed of a *feme covert.*
To authenticate means to give *verity,* and thereby impart
to the instrument its validity or operative effect. Now,
until an ordinary deed has been *signed, sealed* and *delivered,*
it is totally invalid as a deed. All of these several acts must
concur before it can be said to have been "executed" and
capable of "authentication." So equally as to the deed of
a married woman—it must not only be *signed, sealed* and *de-
livered,* but in addition thereto, its execution must be ac-
knowledged upon a private examination, before it will be
capable of authentication. From the very words of the
statute, then, we conclude that there must be a conformity
to the requisition contained in the proviso embraced in the
act of 1835.

Having arrived at the conclusion that the private exam-
ination of the wife is necessary to give validity to the deed,
whether made under the provisions of the act of 1835 or
of 1845, we now proceed to the examination of the deed of
Mrs. Sellars, the admission of which as evidence on the
trial is the point of error now under consideration. There
is no evidence in the deed itself that the premises intended
to be conveyed was the separate property of the wife; but
it is so stated in the bill of exceptions, and must therefore
be taken as a fact admitted. The body of the instrument
contains all the formalities and essential requirements of a
valid deed, and is duly signed by both the wife and hus-
band, in the presence of two witnesses. There is also at-
tached to the deed the following acknowledgment and cer-
tificate:

"STATE OF FLORIDA, *Madison County :* Know all men
by these presents, that I, Lavinia C. Sellars, wife of John
Sellars, named in the foregoing deed of conveyance of real
estate, to Lawrence T. Ferrell, do hereby acknowledge that
I executed the same, with the intent thereby to renounce,

release, relinquish, and forever quit-claim, all my right, title and interest of dower, in and to the lands and tenements therein mentioned and expressed, and that the same was done, freely and voluntarily, and without any compulsion, constraint, apprehension or fear of or from my said husband, or any other person.

"In witness whereof, I have hereunto set my hand and seal, this 12th day of November, A. D., 1859.

LAVINIA SELLARS. [L. S.]"

"Executed in presence of J. W. ANDERSON, SAMUEL F. SLOAN."

"STATE OF FLORIDA, *Madison County:* Be it remembered that on this, the twelfth day of November, in the year of our Lord one thousand eight hundred and fifty-nine, personally came before me, the subscriber, a Justice of the Peace in and for said county, Lavinia C. Sellars, wife of John W. Sellars, and separately and apart from her said husband made and executed the foregoing acknowledgment.

"In witness whereof, I have hereunto set my hand and seal, the day and year first above written.

J. W. ANDERSON, [L. S.]<br>Justice of the Peace."

The only objection made to the sufficiency of this private examination is that the interest acknowledged to have been assigned and intended to be transferred, is limited and confined to her "right of dower" in the premises. If the words "of dower" were stricken out, there could be no doubt as to the sufficiency of the acknowledgment. Shall these words be permitted to defeat the evident intention of the parties to the instrument? The execution of this acknowledgment was manifestly intended to convey some interest in the premises, or it was made in pursuance of a premeditated fraud. Mrs. Sellars had no *dower* interest; her only inter-

est was in the *fee.* If the fee was not intended to be conveyed, then no interest was passed to the grantee, and the whole transaction bears the impress of an unmitigated attempt at fraud. We will not do this lady the injustice to put such a construction on her act; but will rather attribute the insertion of the word "dower" to the lack of information or inadvertence of the officer who made the examination. We think that the word may be discarded as *surplusage*, without doing violence to any principle of the law.

Having maturely considered the case as presented by the record, we are of opinion that there was no error in the rulings of the Judge below.

It is therefore ordered and adjudged that the judgment rendered in the Circuit Court be affirmed, with costs.