A. EINSTEIN'S SONS, APPELLANTS, VS. R. M. SHOUSE, APPELLEE.

1. The word "proving" in section 1, p. 213, McC's. Digest, as to the admission of chattel mortgages to record, includes an *acknowledgment* of the instrument for record by the makers before a proper officer.

2. A substantial compliance with the requirements of statutes governing the acknowledgment or proof of the execution of instruments for the purpose of having them recorded, is sufficient.

3. An acknowledgment made in this State by the makers of a chattel mortgage of "the foregoing instrument by them signed, to be their *free act*," such instrument also appearing upon its face by the attestation clause to have been "delivered," is a sufficient acknowledgment of both the signing and delivering to entitle such instrument to be recorded.

4. A voluntary assignee for the benefit of creditors, who is in possession under the deed of assignment, can not resist a foreclosure of a chattel mortgage made by his assignors, on the ground that

there was an agreement between such mortgagors and the mortgagees authorizing the mortgagors to remain in possession and sell the goods mortgaged without accounting to the mortgagees for the proceeds of the same. The act of 1881 (chapter 3241) §72, p. 829, McC's. Digest, does not change this rule.

Appeal from the Circuit Court for Clay county.

The facts of the case are stated in the opinion.

*Fletcher & Wurts*, for Appellants.

*Silas A. Bradley* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

On the 22d day of October, 1885, Alvan L. Evans and William S. Green, partners doing business under the firm name of Evans & Green, at Orange Park, in Clay county, in this State, executed an instrument in the nature of a mortgage, dated as above, to the appellants, A. Einstein's Sons, of "all the goods, chattels and personal property mentioned in a schedule hereunto annexed and now in their store house in said town of Orange Park." This schedule is as follows:

" SCHEDULE. All the fixtures, furniture and general merchandise contained at this date in the two store houses (one a grocery store and the other a dry goods store), occupied by Evans & Green, in the town of Orange Park, in the county of Clay and State of Florida," and is signed by A. L. Evans and William S. Green.

The condition upon which the mortgage is to become void is the payment to A. Einstein's Sons, their executors, administrators or assigns the sum of $478.75 upon the first day of December, 1885, and $558.60 on January 1st, 1886. The mortgagees also covenant and agree that in case de-

fault shall be made in the payment of the said sum above mentioned, or in case the parties of the first part shall at any time before the day of payment provided for, remove the goods, chattels and personal property or any of them, or permit or suffer any attachment, or other process against property, to be issued against them, or permit or suffer any judgment to be entered up against them, then the sums of money mentioned shall immediately become due and payable, and the mortgagees may take possession of and sell the mortgaged property and satisfy their claim out of the proceeds and account to the mortgagors, their executors, administrators and assigns for the excess.

The instrument purports upon its face to have been signed by both Evans and Green with their individual names, and it is attested as " sealed and delivered in the presence of J. T. Copeland and W. M. Stockton."

The acknowledgment upon which the instrument appears to have been admitted to record by the Clerk of the Circuit Court of Clay county, on the 23d day of October, 1885, is in the following words and figures: " On this 22d day of October, A. D. 1885, personally appeared before me the above named A. L. Evans and William S. Green, and acknowledged the foregoing instrument, by them signed, to be their free act," and it appears to have been taken by J. T. Copeland, a Notary Public for the State at large.

On the 3d day of December, in the same year, Evans and Green made a deed conveying and transferring to Robert M. Shouse, the appellee, all the business, stock in trade, goods, wares and merchandise contained in two stores, situated in the said town of Orange Park, and all their real and personal estate, except such as the law exempted from forced sale, of which property so conveyed a schedule was to be made as soon as practicable, and annexed. Under the terms of this deed Shouse was to take possession of the property,

and sell the same and receive and collect debts owing Evans & Green, and apply the proceeds to the payment of the expenses of the trust and the debts of said grantors therein. The deed preferred certain creditors, and provided that the others should be paid rateably in case the residue of the proceeds, after paying those preferred, should not be sufficient to pay them in full. Shouse took possession under the deed of assignment.

On the 9th of December aforesaid the appellants filed a bill against the mortgagors, Evans and Green, and the appellee, Shouse, praying among other things a decree foreclosing of the mortgage and for a sale of the property covered by it and the application of the proceeds to the indebtedness secured by it.

Process was served on the several defendants and a decree *pro confesso* was, the record states, entered against Evans and Green for want of demurrer, plea or answer.

Shouse answered the bill, and exceptions taken thereto by the complainants having been overruled by the Chancellor, they filed a replication, and testimony was taken, and the cause coming on to be heard a decree dismissing the bill was entered, and from the decree an appeal has been taken.

Shouse asserts as a defence to the bill that the alleged mortgage was never duly acknowleged or proved and filed for record in the office of the Clerk of the Circuit Court for Clay county, and that the mortgaged property was not at the time of the execution of the said instrument, and has not since been delivered to the mortgagees.

The act of November 15th, 1828, sec. 1, p. 213, McC.'s Dig., declares that no mortgage of personal property shall be effectual or valid to any purpose whatever, unless such mortgage shall be recorded in the office of records for the

county in which the mortgaged property shall be at the time of the execution of the mortgage, unless the mortgaged property be delivered at the time of the execution of the mortgage, or within twenty days thereafter, to the mortgagee, and shall continue to remain truly and *bona fide* in his possession.

It is unnecessary for us to say whether or not an instrument in the nature of a chattel mortgage, where there has been no record of it, nor a delivery of possession of the chattle to the mortgagee and a retention of the same by him as contemplated by the statute, is of any effect or validity as against an assignee like the appellant, Shouse. This question is, under the view we take of the case, not involved.

The same section of the above statute provides, among other modes, that mortgages of personal property shall be admitted to record upon proof of the execution thereof being made and exhibited to the recording officer in any of the ways " hereinbefore prescribed for proving the execution of conveyances, transfers and mortgages of real property." Section 4 of this act (Sec. 6, p. 215, McC.'s Dig.,) required for the record of conveyences or mortgages of real estate that the execution thereof should be acknowledged by the party making the same or proved on oath by at least one of the subscribing witnesses thereto before the officer authorized to record the same or before some judicial officer of the State. The word " proving " in the above section includes the acknowledgment provided for in this. Sanders vs. Pepoon, 4 Fla., 472 ; Knowles vs. Martin, 22 Tenn., (3 Humph.), 619. An act approved February 8, 1861, (Chap. 1127, Laws,) authorizes Notaries Public to take acknowledgments of deeds and other instruments of writing for record. The particular objection made to the record in the case before us is that the certificate does not show an acknowledgment of the execution of the instru-

ment, *i. e.*, of both the signing and delivery thereof but only of the signing. It seems to us that an acknowledgment by the makers of an instrument as their "free act" cannot reasonably be held to be an acknowledgment of less than that which the instrument purports, upon its face, to be. This instrument purports upon its face to have been signed by the mortgagors, and likewise, by the attestation clause, to have been delivered in the presence of the subscribing witnesses; and when the acknowledgment was made, the parties making must, in the absence from this certificate of anything to the contrary, be understood to have meant as well that it had been delivered, as stated upon its face, as that it had been signed. The language, "the foregoing instrument by them signed," is all descriptive of the instrument acknowledged. The words "by them signed" are only a part of such description and were not intended to limit the effect of the instrument or the acknowledgment of it.

All the authorities hold that a substantial compliance with the requirements of these statutes is sufficient; it is not necessary to use its identical words. Henderson vs. Grewell, 8 Cal., 581; Owen vs. Norris, 5 Blackf., 479; Morse vs. Clayton, 13 S. & M., 373. A married woman "acknowledged that she *executed* the deed freely," and "*executed*" was held to be equivalent to "signed, sealed and delivered," the words of the statute, Smith vs. Williams, 38 Miss., 48; and a certificate of acknowledgment that the grantor acknowledged a deed to be "his act and deed," instead of using the language "that he signed, sealed and delivered the same," was sustained. Halls vs. Thompson, 1 S. & M., 443. See also Den vs. Hamilton, 12 N. J. Law, 103.

Instruments like this, says the Supreme Court of the U. S., in speaking of an acknowledgment of this kind, should

be construed, if it can reasonably be done, *ut res magis valeat quam pereat;* it should be the aim of courts in cases like this to preserve and not to destroy. Sir Matthew Hale said they should be astute to find means to make acts effectual according to the honest intent of the parties. Kelly vs. Calhoun, 95 U. S., 710, citing Roe vs. Tranmar, Willis, 682. In Carpenter vs. Dexter, 8 Wall, 513, it was held that reference could be had to the instrument itself, or any part of it, in aid of the certificate of acknowledgment or proof ot a deed. The officer stated in his certificate that the "above named Wm. T. Davenport, who has signed, sealed and delivered the above instrument of writing, personally appeared" before him and acknowledged the same to be his free act and deed. The statute provided that the person making the acknowledgment should be personally known to the officer to be the real person who executed the deed, and in whose name the acknowledgment is proposed to be made, or should be proved to be such by a credible witness; and that such personal knowledge or proof should be stated in the certificate. Looking to the deed itself, says the court, it is found that the attestation clause states that the deed was signed, sealed and delivered in the presence ot two subscribing witnesses, and one of these witnesses was the Justice of the Peace before whom the acknowledgment was taken; that read with the deed the certificate amounts to this: That the grantor personally appeared before the officer, and in his presence signed, sealed and delivered the instrument and then acknowledged the same before him; that an affirmation in the words of the statute could not more clearly express the identity of the grantor with the person making the acknowledgment. Brooks vs. Chaplin, 3 Ver., 281; Luffborrough vs. Parker, 12 S. & R., 48.

The cases of Hartley vs. Ferrell, 9 Fla., 374, and Evans vs. Summerlin, 19 Fla., 858, are altogether inconsistent with the approval or adoption of any severe criticism of the language of such acknowledgments. In each of these cases the conveyance was of a married woman's separate property and the acknowledgment was that she executed the deed for the purpose of relinquishing her right of *dower* in the lands. She had no such right in them. The court held the acknowledgment to be sufficient to sustain the deed as a conveyance of her estate in fee in the lands.

The acknowledgment in the case before us, as it is shown by the certificate, was sufficient; and the mortgage having been recorded in Clay county, as it was on the day after its execution, delivery of the property to the mortgagees was not necessary to the validity of the instrument.

II. The next ground upon which Shouse, the assignee, seeks to defeat the mortgage is, in short, that there was an agreement between the mortgagors, Evans & Green, and the mortgagees, the appellants, whereby the former were to remain in possession of the mortgaged property and sell goods without accounting to the latter for the proceeds.

In McCoy vs. Boly, 21 Fla., 803, we held that a mortgage duly recorded is not void as between the parties to it or as to a third person whose claim is not based on a valuable consideration, from the fact that it permits the mortgagor to sell personal property covered by it, without accounting to the mortgagee for the proceeds. In Logan vs. Logan, 22 Fla., 561, our decision was that such a mortgage of a stock of goods is void as to the creditors of the mortgagor.

Assuming for the present for the purpose of the question to be met, that the record before us may show such a state of facts of the character indicated as would render the

mortgage void as to creditors of Evans & Green, or we may say as to subsequent purchases for value from Evans & Green, the question presented by counsel is whether or not the appellee, Shouse, has by virtue of his deed of assignment, the right to question the validity of the mortgage on the ground indicated.

In Campbell Manufacturing Co. vs. Walker, 22 Fla., 412, the appellant made an agreement in writing with Ashmead Bros. to sell to the latter a printing press; it reserved to the vendor the title until the purchase money should be paid by the purchasers, although the press was delivered to the latter. The Ashmeads being in possession of the press, but not having paid the purchase money, made an assignment of their property to Walker for the benefit of their creditors, and the appellant company brought replevin against Walker, who held the press under his deed of assignment, to recover the same. We held the agreement was a conditional sale and valid against subsequent creditors and *bona fide* purchasers for a valuable consideration without notice, and not a chattel mortgage; and further, that Walker was neither a creditor of the Ashmeads nor a *bona fide* purchaser from them, and that he could have no greater rights in the press than the Ashmeads had, and that they could not dispose of the property in the payment of their debts.

We have carefully examined the question of Shouse's right to make the defence under discussion and our conclusion is that he cannot do so. The mortgagors could not do it, and he has no greater power or privilege in the matter than they had, nor could they give him more. This conclusion is in accordance with the decided weight of authority and entirely in harmony with the previous doctrines of this court on the same and analagous questions. It is a mistake to suggest that the case of Kent vs. Lyon, 4 Fla., 474,

holds that the administrator of a fraudulent grantor, dying in possession of the property, can urge his intestate's fraud as against a recovery by the fraudulent grantee or donee, such administrator coming into possession through his intestate. The contest there was not between the administrator and the fraudulent donee, but between a creditor of the intestate who had levied his execution on the property in the actual possession of the administrator, and the donee, and the court held that deed of gift was void with reference to the creditor, and could be subjected to his execution as assets of the intestate. A careful consideration of the opinion will find that it distinguishes clearly the effect of the bill of sale, or transaction as between the creditor and the donee, from its effect as between the grantor or his administrator and the donee. The cases it cites illustrate the distinction, and it is only where a creditor is a party seeking to subject to his debt the property or to assert his rights as such that it is regarded as assets in the hands of the administrator, and in his favor alone is it regarded as assets or the question of fraud permitted to be raised. The conclusion reached in Holliday vs. McKinne, 22 Fla., 153, where the authorities are reviewed, is that the administrator of a fraudulent vendor of personal property, dying in possession, cannot, as against the vendee or donee suing him to recover possession, question the sale as having been made by the intestate in fraud of his creditors.

That a voluntary assignee for the benefit of creditors cannot, in the absence of legislation in aid thereof, resist the enforcement of a mortgage of his assignor, on the ground that it was made by the latter in fraud of his creditors, is shown by the following authorities: Williams vs. Winsor, 12 R. I., 9; Wilson vs. Eslen, 14 ib., 621; Brownwell vs. Curtis, 12 Paige, 210; Storm vs. Davenport, 1 Sandf. Chan., 135; Van Hensen vs. Radcliff, 17 N. Y., 580; Flower vs.

Cornish, 25 Minn., 473; Estabrook vs. Messersmith, 18 Wis., 572; Hawks vs. Pritzlaff, 51 ib., 160; Wakeman vs. Barrows, 41 Mich., 363; Bridgford vs. Barbour, 80 Ky., 529; Burrill on Assignments, sec. 391.

Such an assignee is bound where his assignor would be bound. Morris' Appeal, 88 Penn. St., 368; Wakeman vs. Burrows, *supra.*

The fact that some creditors are preferred by the deed of assignment does not increase the assignees' powers, nor does the fact that they have accepted the same.

The assignee cannot invoke the rule that he who hath done iniquity shall not have equity any more than his assignor could. As to all defences he stands in the shoes of the former.

The conclusion of the Court of Errors and Appeals of New Jersey, in Pillsbury vs. Kingon, 33 N. J. Eq., 287, that an assignee for the benefit of creditors may file a bill to set aside a conveyance made by his assignor in fraud of creditors, is not reached without invoking the aid of the statute of that State as to such assignments. Many of the authorities make a clear distinction in favor of statutory assignees or trustees. We have no statute increasing the powers of such assignees in this respect. The act of 1881, sec. 72, p. 829, McC.'s Digest, is " an act to authorize the real parties in interest to bring and maintain suits *at law* in their own names in certain cases." In providing that all civil actions may be maintained in the name of the real party in interest bringing them, and that an executor, administrator, trustee of an express trust, including a person with whom or in whose name a contract is made for the benefit of another, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted, it was the purpose of this statute to regulate the question of parties in actions *at law* in the cases to

which it applies, but not to change the effect of a voluntary assignment for the benefit of creditors by investing him with any right of action or defence, which before its enactment, his assignor did not have and consequently could not confer. There is nothing in Robinson vs. Nix, 22 Fla., 322, inconsistent with this view.

The decree dismissing the bill was erroneous. Upon the case made by the pleadings and proofs we think the complainants were entitled to a decree. The decree appealed from is reversed and the cause will be remandad for proceedings not inconsistent with this opinion. It is so ordered.