Elizabeth Jackson et al. v. J. S. Haisley et al.—Syllabus.

ELIZABETH JACKSON ET AL., APPELLANTS, VS. JULIA. S. HAISLEY ET AL., APPELLEES.

1. By the attestation clause of a deed it appeared that the same was "signed, sealed and delivered." in the presence of two witnesses. One of the subscribing witnesses, making affidavit for. the purpose of having the deed admitted to record, only swore that he saw the grantor "sign" the same, and "acknowledged' that he did so for the purpose therein mentioned," and that affiant and the other subscribing witness "signed the same as witnesses." Construing this affidavit, together with the attestation, it sufficiently proves the execution of the deed to admit it to record.

2. It is not the policy of the law not to nullify records wherever substance is found, and obvious clerical errors and technical omissions should be disregarded. A substantial compliance with the statute is sufficient.

3. It is error in an action of ejectment to exclude from the jury evidence which tends to show a prior possession upon the part of the plaintiff.

4. Where a party in peaceable possession of land is ousted by a bare trespasser who enters without any right or claim of title, the ousted party may recover upon proof of prior possession, and it is not necessary for such recovery that such possession should have been held for the time and in the manner required by the statute for a prescriptive title.

5. In an action of ejectment where the defendant offers no proof of title beyond a mere naked possession, it is not "necessary for the plaintiff to show by competent evidence an unbroken chain of title, from the government down to the plaintiff, in order to recover the premises," and such an instruction to the jury was erroneous.

Appeal from the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*R. L. Anderson*, for Appellants.

*Thos. F. King, Henderson & Raney*, for Appellees.

BRIEF OF THOS. F. KING.

Neither the Constitution nor the statutes except the county commissioners from the established principle that where a sealed instrument is required to be made, the authority to make it must be under seal. Story on Agency, 3d ed., s. 49. 50 & N., S. 53 N., S. 55 N., on page (71); sec. 450 N., on page 559; 1 Waits Ac. & Def. 218.

3d. Whatever authority McIntosh had to convey should have been recorded just as was required by the statute then existing, which prescribed that a power to convey must be recorded at the time the deed is in the clerk's office. This was not done. This judge of probate of course was no more than any other individual when he signed the deed. All the power he had to convey was that derived from the board. His merely saying that he was judge of probate and president of the board did not make him so, and he was not one of those officers whose acts are prima facie valid. Nor did his assertion that he had power to convey prove his assertion. No one looking at the record of the deed could take it for granted that McIntosh had authority to make the deed; an intending purchaser or creditor reading that record would no more be bound by it, than in any other case of a deed made by an attorney in fact, where power was not previously recorded.

4th. The sale of these lots was made by the treasurer. The county commissioners had no authority to delegate their power to sell the county property. By this act Thomp. Digest, (127), they were empowered to sell; as officers they had this power. It was a trust reposed in them for the good of the county. The county looks to their discretion, judgment and honesty, and not another's, in the uses they made of this property.

As officers with this delegated trust they could not delegate their trust to any one else unless permitted by statute, any more than a sheriff, a tax collector or commissioner appointed by a court to sell could dele-gate his power to sell without a statutory provision.

5th. But there is another objection to the introduc-tion of this deed equally fatal. It was not made in the name of the county of Marion, the grantee from the United States. The court will see by the deed that the county of Marion is not once mentioned as the owner of the lots, nor is it stated that the board of county commissioners gave the power to sell, nor is it stated who gave the power. Without evidence out-side of this deed it would be impossible to say who was the owner of the property and who gave McIntosh the power to sell. There is simply his bold assertion that he had power to sell some lots in Ocala, and it does not appear in the deed that these lots were in Ocala, or that the lots conveyed were parts of the lots sold by the treasurer, or that they were any of the lots the board ordered to be sold. It is but a conjecture as to the facts regarding these matters. We refer the court to the following leading cases on the point: Story on Agency, s. 450, note 1 on p. 559, 3d ed.; 1 Waits Ac. & Def., 236; Clark vs. Courtney, 30 U. S. Sup. Ct. R., page 140 and 151, bot.; Brinley vs. Mann, (Mass.), 48 Am. Dec. 669; Elwell vs. Shaw, 7 Am. Dec., 126; Fowler vs. Sherer, 7 Mass., 19.

The court will observe that in all of these cases the names of the principals are clearly set forth, and in Brinley vs. Mann the deed stated, as in the case at bar, that the agent "was duly authorized." In Elwell vs. Shaw, the letter of attorney was read. In all of them there was no doubt of the intention of the par-ties, but the deeds were fatally defective because not

made in the name of the principal. We take it as the court said in Elwell vs. Shaw, the objection to such signatures is supported by all the adjudged cases relating to the point. Say the Supreme Court of the United States in Clark and Courtney: "This may look like referment," but "it is certain that Combe's case has never been departed from and has often been acted on as good law." If the question was *res integra* it might be better to adopt a different rule, but there is no instance in which that most wholesome rule *stare decisis* should apply, since it has prevailed for hundreds of years in England and America, and an innovation of it might cause endless confusion in the interpretation in powers of attorney. On these grounds we hold the court below should have excluded the deed from McIntosh to Child.

II. We come now to the exception that the court erred in refusing to admit the copy of the deed from Child to Merry. It was properly refused. It is not the copy of a deed properly recorded. McClel., p. (215), s. (6), requires the execution of a deed to be proved by a subscribing witness. Sec. 1, McClel. (214), requires for a valid deed that it should be sealed and delivered in the presence of two witnesses. The affidavit of the witness to the deed states that the grantor signed the deed in his presence, but does not say that it was sealed and delivered, or that it was executed. Consequently it was not properly recorded. 25 Fla., R. Edwards vs. Thom., p. 222.

III. The court properly refused to allow what purported to be the copy of a deed from Child to Merry to be read as secondary evidence. It was not shown that there was any original deed. The witnesses do not say that this is a copy of a deed they once saw. They do not say that they ever saw this copy. They

do not say that they ever compared it with an original or that they knew anything of an original.

IV. The deed from Merry to Jackson had no witnesses. It is needless to say more than that this was properly refused.

V. The plaintiff attempted to show a title by possession. There is no evidence that Plaintiff had cultivated or improved or inclosed the lots for seven years, as required by sec. (6) & (8), McClel. (732), and thus acquired title by possession.

VI. The deed from the heirs of Merry was properly refused. It was not shown that the plaintiffs were in possession when the deed was made. The deed was not recorded when this suit was commenced. There was not, as we have shown, any evidence of a deed from Child to Merry. Consequently a deed from his heirs was of no avail. Nor does this deed avail in the attempt to show color of title, as no possession, much less seven years' possession, was shown.

VII. The court properly refused the instruction asked by plaintiff, that if neither party showed title plaintiff had a right to recover if forcibly dispossessed. This suit requires plaintiffs to recover upon proof of title. The plaintiffs had the right to recover possession, if forcibly dispossessed, in an action for forcible entry and detainer, but not in a suit like this where only title is involved. As this case stands, we are rightfully in possession, no matter how we got there. We had the right to take forcible possession of our own, if necessary to use force. The sole question here is, did plaintiffs have such a title as to justify the court in ordering to them a writ of ouster, not whether we had gone on the land by force or in any other way. If they don't show a title we need not show any right to the possession we have.

VIII. The court did no wrong in striking out the testimony of Agnew, Payne and Long. Their testimony was for the purpose of proving title in plaintiffs by possession, having failed to prove a paper title. The court will perceive, in looking over the testimony of these three witnesses, that there was not a particle of evidence to show cultivation, improvement or inclosure, as required by section (6 & 8), McClel., 732. But granting for the sake of argument that there was error in this ruling, we say, that taking the whole testimony together, the verdict was correct. These facts are patent: That the plaintiffs did not show a connected chain of title from the Government to Jackson, the plaintiff, and that there was not title in them by the possession required by our statute. If the plaintiffs had had a verdict, it must inevitably been set aside.

Where the verdict is supported by the testimony it should not be disturbed by erroneous rulings if they do not prejudice. 5th Fla., 276; 8 Fla., 391; 6 Fla., 515; 25 Fla., 289.

See also a case decided in this court, and to case in the 26th Fla., that a verdict will not be set aside because of the erroneous charge, if the verdict conforms to the law and evidence.

#### BRIEF OF HENDERSON & RANEY.

The following views are respectfully submitted in behalf of Mr. and Mrs. Haisley, who were defendants in the Circuit Court, as they are here:

1. The trial court did not err in refusing to admit in evidence the certified copy of the deed from J. Child to Horace Merry, against the objection thereto that the deed was not properly acknowledged or proven, so as to be admitted to record. There was no acknowledgment for record, and the question is whether or not

the proof shown by the certificate to have been made
by the subscribing witness W. S. Olmstead is sufficient
to render the record actually made legal, and entitle
the offered copy to be read as evidence.   Of course the
rule in favor of the admissibility of such copies is lib-
eral.   If there has been a substantial compliance with
the requirements of the statute as to proof of execu-
tion, the record of the instrument will be held legal,
and the copy, if duly certified, will be admitted as tes-
timony.   Einsteins' Sons vs. Shouse, 24th Fla., 490;
Edwards vs. Thom., 25th Fla., 22; Summer vs. Mitch-
ell, 29th Fla., 179.   Nothing more than a substantial
compliance is required, but this much is necessary;
nothing less will answer.   Olmstead swore to three
things: 1st, that he saw Child sign the deed; 2d, Child
acknowledged that he signed it for the purposes men-
tioned in the deed; and 3d, that he, Olmstead, and
Livingston, the other subscribing witness, signed the
deed as witnesses.   The first and second of these aver-
ments speak as to what the grantor did, according to
the knowledge of the affiant, or, in other words, they
tell what the affiant saw or knew that the grantor did;
the third relates only to the signing of the witnesses.
The evidence contained in the first two clauses of this
certificate proves nothing more than the actual signing
of the deed, and acknowledgment, then and there, of
such signing for the purposes of conveying the land as
stated in the deed.   There is no evidence in the certifi-
cate of Olmstead's having seen any sealing or delivery
of the deed, or of the grantor's having ever acknowl-
edged any such sealing or delivery.   In Edwards vs.
Thom., supra, the affidavit of the subscribing witness
was that he saw the grantors "sign the foregoing in-
denture and acknowledge that they did so for the pur-

pose therein expressed, and that he together with J. W. Smith signed the same as witnesses," and the court held the proof to be insufficient. Standing upon the certificate of proof, the case just mentioned must be held to conclude the insufficiency of the proof in the case at bar.

The only theory that can be resorted to overcome this conclusion is that the language of the affidavit, or certificate of proof, can be connected with the attestation clause and thereby give such affidavit or certificate of proof the effect to show that the witness saw both the sealing and delivery as well as the signing of the deed, or that the grantor acknowledged to such witness the sealing and delivery as well as the signing. In Edwards vs. Thom., the conclusion of the deed was: "In testimony whereof the said parties of the first part have hereunto set their hands and affixed their seals on the day and year first above written, in the presence of" the two witnesses subscribing, and the mortgage deed being signed and sealed by the grantors; and it was said in the opinion that there was in the body of the instrument "no statement of delivery, even if the language of the certificate of proof was such as would connect itself with such statement, were it there and cured what might otherwise be a fatal deficiency."

Whether or not the certificate connected itself with the quoted clause was not decided. There are cases in which the body of the deed can be invoked in aid of the certificate, as in Summer vs. Mitchell, supra, and authorities there cited; but recognizing that it is the settled policy of the law to uphold the record wherever a substantial compliance with the statute is shown, or whenever it appears with reasonable certainty that the requisites of the law have been complied with (authorities, supra, and Hines Lessee vs. Longroth, 11

Wheat.; 199), we still think that there is a substantial defect in the certificate, which no part of the deed can be made to supply. The law contemplates where the record is made on proof of a subscribing witness, that such witness shall swear in effect that he saw the deed fully executed, and that the certificate of proof, either in itself, or in itself and by connecting itself with the deed, shall show such execution of the deed. It is of course not necessary to state in terms that the witness saw the deed signed, sealed and delivered; any tanta-mount expression will do, but less will not do. There is less here; there being no evidence that the witness ever swore, or was even willing to swear that the grantor ever sealed or delivered the deed in his pres-ence, or ever acknowledged full execution of the deed, the sworn evidence is thus deficient and can not be supplemented by evidence not sworn to. It falls far short of the case of Einstein's Sons vs. Shouse; there the deed, as a completed act, was, notwithstanding the use of words held to be merely descriptive, acknowl-edged as being the grantor's free act. 24th Fla., 494–5. The law requires of the subscribing witness sworn evi-dence of a substantial execution of the deed. The fact of it appearing from a written statement, or attestation clause, above his signature, that the deed was signed, sealed and delivered in his presence does not entitle the deed to record; such sealing and delivery are not sworn to. The affidavit shown to have been made does not connect itself with the attestation in any way, nor justify the conclusion that the witness intended or meant to swear to such sealing and delivery. The affi-davit can not be extended by presumption or intend-ment. Fipps vs. M'Gehee, 5 Porter, 413; Stanton vs. Batton, 2 Conn., 525; Bryan vs. Ramirez, 8 Cal., 461; Edwards vs. Thom., supra. The case at bar is clearly

distinguishable from those like Summer vs. Mitchell, supra, and Carpenter vs. Dexter, 8 Wall., 513, and others, in which the presumption or identity are indulged; which authorities, as stated on page 208 of 29 Fla., do not make presumptions supply the statutory requirements of an express statement. The natural disposition to sustain titles, or such record, finds itself obstructed in this case, we think, by the deficiency in the sworn evidence. Even if it be that common understanding here, as in Arkansas, will give to the expression "signed and sealed" an equivalent meaning to "signed, sealed and delivered," as was held in Tuffs vs. Gatewood, 26 Ark., 128, we can not concede that the expression "signed" has such meaning, either here or in Arkansas.

II. Striking out the testimony of Payne, Agnew and Lang, in relation to the possession of the lots, on the ground that it did not prove nor tend to prove possession on the part of the plaintiffs, was not error. (This testimony is to be found on p. 26–28 of the record). This testimony does not tend to prove that the plaintiffs had possession prior to the defendants. There is no testimony tending to show that the plaintiffs ever had possession of the lots. Payne "considered" himself in possession as the agent of Carn, but Carn is not the plaintiff here, nor is Agnew, and the possession of neither of them is of any moment; and even Carn had no possession unless it is to be inferred from Payne telling Agnew that he might go ahead and use the property, and Agnew's subsequent use of it. Payne's representation of plaintiff was only to collect the purchase money due by Carn to them for the lots for which Carn had what was then believed to be a valid deed from plaintiffs; it was not as claiming possession for plaintiffs. There

was no controversy then as to the validity of Carn's deed. Carn's possession, if he had any, and Agnew's, was in their own right, and not as holding for plaintiffs; it was not under an executory contract for plaintiffs, but adverse to plaintiff. Core vs. Faupel, 24 W. Va., 238; Ketchum vs. Spurlock, 34 Id., 597; Nowlin vs. Reynol, 25 Gratt., 137; The Society, etc. vs. Clark, 4 Pet., 480; Bradstreet vs. Huntingdon, 5 Peters, 402.

III. In ejectment it is incumbent on a plaintiff claiming under deeds to show proper conveyances from a party having either title or prior possession, to put a defendant in possession to proof of his right. Dubois vs. Holmes, 20 Fla. 834; Jones vs. Loftin, 16 Fla. 189. This doctrine is subject to the qualification that the action may be maintained on a prior actual and unabandoned possession against an intruder thereon. Seymour vs. Cresswell, 18 Fla. 29; Simmons vs. Spratt, 20th Fla. 395; Ashmead vs. Wilson, 22 Fla. 255. Upon this record no prior possession has been shown in Merry, or any of his heirs, nor any title or possession in the plaintiffs; certainly none such as the law requires as a sole basis of recovery. This being so, the deed from Merry and wife, and that from the heirs of Merry to Elizabeth Jackson became immaterial, and there was, when plaintiffs rested, no evidence upon which the plaintiffs could have recovered against the defendants. The jury has found such a verdict then as should have been found had no testimony been stricken out. It will be seen that the plaintiffs had rested when the motion to strike was made. They did not seek to introduce any other or further testimony. There is no room for contending that anything like a statutory title by adverse possession had been proven. There was an entire failure to prove anything of the kind, and had the original deed from Merry and wife

been admitted, prior to the introduction of the testimony subsequently stricken out, instead of being excluded, as it was, it would not have been of any benefit to the plaintiffs, as they had shown no possession to which the instrument could have been of any support; and had it been admitted, the result would have been that it should either have been stricken out with the other testimony, or the court should have instructed the jury to find for the defendants, or, in the absence of such instruction, the verdict must have been, as it was, for the defendants.

IV. The plaintiffs having failed to show possession in themselves and to connect themselves with the title of any one shown ever to have had possession, we see no harm to them in the charge that "in this case it was necessary for the plaintiffs to show by competent unbroken chain of title from the government down to the plaintiffs," even if it can be held erroneous.

V. There was no error in excluding the deed from Child to Merry; and the plaintiffs having disclosed their whole case and shown no right to recover the verdict should not be disturbed.

No other points seem to us to merit any attention.

LIDDON, J.:

The case below was an action of ejectment brought by appellants against appellees. The verdict and judgment were for the defendants. The property in dispute were certain lots in the town of Ocala.

Among other assignments of error is one based upon the exclusion from the jury of a certified copy, from the records of deeds, of a deed conveying the premises in dispute, made by one James Child to Horace Merry. Before offering the copy from the record the plaintiffs made proof that the original was not in their posses-

sion, and that search had been made for the same where it was most likely to be found, but that such search was ineffectual. As the objection upon which the paper was excluded relates entirely to the proof of its execution before the recording officer, it is only necessary to set out in this opinion the *in testimonium* clause, the attestation and the affidavit, which were as follows: "In witness thereof the said party of the first part hath hereunto set his hand and seal the day and date above written.

J. CHILD.    (Seal.)

Signed, sealed and delivered in presence of

    W. S. OLMSTEAD,

    JOHN I. LIVINGSTON.

COUNTY OF MARION, }
STATE OF FLORIDA. }

Before me, John L. Branch, Clerk of the Circuit Court of Marion county, personally appeared Woodbridge S. Olmstead, who on his oath says that he saw James Child sign the above deed, and that he acknowledged that he did so for the purpose therein mentioned; and he, the said W. S. Olmstead, and John Livingston, signed the same as witnesses.

W. S. OLMSTEAD.

Sworn to before me this the 4th day of January, 1848.

JOHN L. BRANCH, Clerk."

The same John L. Branch who took the proof was the clerk who recorded the deed, and the copy offered in evidence was duly certified from the official record of deeds. The objection urged is, that the affidavit was insufficient to authorize the recording of the deed, because it proved only a signing, and not the sealing and delivery, or the full execution thereof. By reference to the foregoing portion of the deed, it appears by the attestation clause thereof that the same was "signed

SUPREME COURT.

sealed and delivered" in the presence of two witnesses, although the witness making affidavit for the purpose of having the deed recorded only swore that he saw the grantor "sign" the same, and "acknowledged that he did so for the purpose therein mentioned," and that affiant and the other subscribing witness "signed the same as witnesses." Construing this affidavit with the attestation clause of the deed itself, it sufficiently shows that the deed was not only signed, but sealed and delivered. The affidavit of proof sufficiently refers to the deed; and both should be construed together in determining the sufficiency of the proof of execution. It is the policy of the law not to nullify such records wherever substance is found, and obvious clerical errors and technical omissions should be disregarded. It is sufficient if there be a substantial compliance with the statute. The subject has been fully discussed in this State, and further discussion is unnecessary. Einstein's Sons vs. Shouse, 24 Fla. 490, 5 South. Rep. 380; Sumner vs. Mitchell, 29 Fla. 179, 10 South. Rep. 562; Cleland vs. Long, 34 Fla. 353, 16 South. Rep. 272. The court erred in refusing to permit the record to be read in evidence to the jury.

Several assignments of error are predicated upon rulings of the court below excluding from the jury two other deeds by which the appellants (plaintiffs below) sought to establish a chain of title from Horace Merry, the grantee in the deed above mentioned. They are not argued by counsel for appellants. Adhering to the rule established and frequently asserted here, we consider these assignments as abandoned. We have not considered them except so far as to determine whether upon the whole case the exclusion of the deed of Child to Merry was harmful or harmless error, and we indicate no further opinion as to whether the

assignments of error under consideration are or are not well taken, except that the error in excluding the deed of Child to Merry, upon a view of the whole case, was not harmless error.

The next error complained of is the ruling of the Circuit Court striking out the testimony of M. L. Payne, E. W. Agnew and Roderick Long, witnesses for the plaintiffs. Among other things, the witness Payne testified: "I considered that I was in possession of the property, as agent for Carn, before Haisley (one of the defendants) enclosed it in 1883. E. W. Agnew & Co. were in possession of it until Mr. Haisley took it from them in October, 1883. I placed E. W. Agnew in possession, representing D. H. Carn and the plaintiff Elizabeth Jackson. They were both interested in the property. * * * I was acting jointly for both of them. * * . * Agnew & Co. commenced using the property as a lumber-yard early in 1883, and were so using it and had hauled a good big pile of lumber there to commence building the livery stable, when in October, 1883, Mr. Haisley took possession and built the fence. * * * I put Agnew in possession as agent of Carn, for benefit of Carn and plaintiff Jackson." E. W. Agnew testified as follows: "I have known the lots in suit since 1865. E. W. Agnew & Co. bought them, as we thought, and in October, 1883, commenced to build a stable on the lots. We used them whenever we wanted to. Before we went into possession no one was ever in possession. I went over these lots five or six times a day, going to and from my gin-house. Some two or three months before I commenced to build on them, I made arrangements to use them as a lumber yard. I inquired as to who owned them, and ascertained that Mr. Payne was agent for them. On authority from Mr. Payne I took possession of the property. I never

paid for it. I had a deed. I told Mr. Payne I would not pay until the title was settled. I never heard any question about the title until I commenced to build on the lots. I could not find out who claimed them until Mr. Payne told me he was agent. I never finished building the stable. I sent a man down with lumber, and Mr. Haisley forbade him to come on the property, and threatened to shoot the man if he did come. I used the lots as a lumber-yard before this—two or three months before Mr. Haisley ran the driver off. I think we used the lots for piling lumber on while building the hotel, some two or three months before this. I bought it in July or August, 1883, and continued in possession until Haisley forcibly drove my driver away. This was in October, 1883. I sent wagon down with lumber, and Mr. Haisley had a pistol in his hand and said he would shoot the driver if he came on the lots. Up to that time I used the lots as a lumber-yard and for any other purpose I wanted to. I was authorized to go in possession by Mr. Payne, as the agent of Mr. D. H. Carn. I did not pay for the land because this trouble came up. The deed was from Carn. Mr. Haisley built the first fence. It was on Saturday night after he had run off the driver. It was either Saturday or Sunday night. I went by there about sun-down and there was no fence. Next morning it was there. It was built between sunset and sunrise, I think on Saturday night. He forcibly drove off my driver and myself. Before I went into possession the lots were used as a public water-closet." On cross-examination the witness testified: "The lumber was not put on the lots after getting Haisley's consent; said nothing to Haisley about it. I don't think the workmen had commenced work; had hauled several loads, but don't know how many. The lumber was put on lot No. 4, but can't say how much

of the lot was covered by it; it was before the commencement of the suit of Carn vs. Haisley. Elizabeth Jackson had some interest in the lots; I did not know what it was. M. L. Payne gave me possession." The witness Long testified, among other things, as follows: "I commenced building the fence for Mr. Haisley about 3½ o'clock on Monday morning. About one o'clock on Saturday the contract was made. Mr. Haisley hired four or five hands; finished the fence about eight o'clock Monday morning. Mr. Haisley was there with his gun." On cross-examination the witness testified: "I put fence around lots 3 and 4, of block 36. Nobody was in possession until Mr. Haisley had fence built. Agnew had put lumber on it while building hotel. I cut some fire-wood for myself under Mr. Haisley in 1882. I looked after these lots for Mr. Haisley."

The court below excluded all of this testimony, motion being made therefor, upon the ground that "the same did not prove or tend to prove possession upon the part of the plaintiffs." It needs no elaborate demonstration or any analysis of the testimony to show that the Circuit Judge was mistaken upon this point, and that the testimony does at least "tend to prove possession upon the part of the plaintiffs." We think it not only tends to prove a possession upon the part of the plaintiffs, but also tends to prove that such possession was prior to that of the defendants. The evidence should not have been taken from the consideration of the jury. It is claimed that this evidence of possession not being connected with a paper title—the deeds showing title in the plaintiff, Mrs. Jackson, having been stricken out—was not sufficient to have changed the verdict, because it did not show such possession for the full period of seven years, as required by the statute of limitations of this State. This statute was in-

tended to confer a title by prescription, where posses-
sion is held for the time and in the manner required
by it, against all persons claiming title, including the
true owner of the premises.   It was not intended that
such a title must be shown in a suit brought by one
having a prior possession against a bare trespasser who
enters upon the land without any right or claim of
title whatever.   In this case the evidence upon the
part of the plaintiffs was so stricken out, that he could
not obtain a verdict, and defendants did not need to,
and did not, offer any evidence whatever of title in
themselves.   So far as appears from the evidence of the
plaintiffs, the defendant W. H. Haisley was an intruder,
a bare naked trespasser, forcibly taking possession of
property and maintaining such possession by violence
and the display of deadly weapons.   Upon the ques-
tion of a recovery in an action of ejectment by right of
prior possession, this court has said: "The rule as to
rights resulting from prior possession we think is cor-
rectly stated by the Court of Appeals of Virginia,
when it holds that where a party in peaceable posses-
sion of land is entered upon and ousted by one not
having title to or authority to enter upon the land, the
party ousted may recover in ejectment upon his pos-
session only; and his right to recover can not be resisted
by showing that there is or may be an outstanding
title in another, but only by showing that the defend-
ant himself either has title or authority to enter under
the title.   Tapscott vs. Cobbs, 11 Gratt., 172.   In the
English cases of Read and Morpeth vs. Erington,
Croke Eliz., 321, Bateman vs. Allen, Ibid, 437, and
Allen vs. Rivington, 2 Saund., 111, it was shown
that the plaintiff was in possession, and that the
defendant entered without title or authority, and the
court held that it was not necessary to decide upon the

title of the plaintiff and gave judgment for him.    See
also 14 Eng. Com. Law, 41.    This doctrine seems to be
questioned in some of the States of the Union, among
which are Delaware, North Carolina, South Carolina
and Indiana, but the decisions in Virginia, Georgia,
Kentucky, California, New Jersey, Connecticut, Ver-
mont, Ohio, Pennsylvania, Maryland and Texas sus-
tain it, and we think the rule eminently calculated to
preserve peace in communities where there are vacant
lands of which parties may take possession.    For if the
last possessor, even if by violence, is to be sustained,
there certainly would be personal conflict.    The pos-
session which the law contemplates, in a case where
plaintiff has no title, however, is an actual possession.
Some of the authorities say 'an open, notorious, exclu-
sive and actual possession.' "    Seymour and Simpson
vs. Creswell, 18 Fla., 29.

The doctrine, that a plaintiff in ejectment may recover
on proof of prior possession against one not having a
better right, or an intruder, has also been upheld in
this State, in Ashmead vs. Wilson, 22 Fla., 255, text
259; Simmons vs. Spratt, 20 Fla., 495.    See also 6 Am.
& Eng. Ency. of Law, 227, text and notes.    In determ-
ining this point we do not determine the probative
force or effect of the excluded testimony.    That was
the province of the jury.    We only say that it tends
to show a prior possession in the plaintiff, Mrs. Jack-
son, to the premises in dispute.

The court charged the jury as follows: "In this case
it is necessary for the plaintiffs to show by competent
evidence an unbroken chain of title from the govern-
ment down to the plaintiffs, in order to recover the
premises."    The defendant offering no proof of title
beyond a mere naked possession, this charge was
clearly erroneous, both as applied to the facts of this

case and as a general proposition of law. "The rule, that a plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's title, is not to be understood as requiring that he shall be compelled in the first instance to trace his title back to the original grantor, but only that he shall exhibit so much as will put the defendant to support of his possession by a title. superior to one of mere naked possession." Hartley vs. Ferrell, 9 Fla., 374.

For the errors herein mentioned, the judgment of the Circuit Court is reversed and a new trial granted.