Argued April 13, affirmed April 20, 1915.

## LOVE *v.* LINDSTEDT.

(147 Pac. 935.)

**Wills—Estates—Interest Devised.**

· 1. Where a testator, after devising property in fee, added a codicil, declaring that the devise should be for the sole and separate use of the devisee, and that in case of his death without lawful issue, to others, the devisee took a life estate with remainder over.

**Wills—Contingent Remainders—What are.**

2. Where a testator devised property to one for life, remainder to his issue, and in case of his death without issue remainders over, the issue of the devisee have a contingent remainder, because the fee could only vest in them if they survived him.

Remainders—Contingent Remainders—Conveyances.

3. One having a contingent remainder may convey it.

[As to contingent remainders, how barred, defeated or conveyed, see note in 17 Am. St. Rep. 839.]

Wills—Construction—Contingent Remainders and Executory Devises.

4. A future estate will be construed as a contingent remainder rather than an executory devise.

Remainders—Contingent Remainders—Defeat.

5. Where a testator devised land to his son for life, remainder to the son's issue, with contingent remainders over, and the issue of the son, who were living, as well as other contingent remainder-men, conveyed their interest to the devisee, the devisee acquired the estate in fee, contingent remainders to unborn persons being defeated because the life estate upon which they were based was destroyed.

From Multnomah: GEORGE N. DAVIS, Judge.

In Banc.  Statement by MR. JUSTICE McBRIDE.

This is a suit by Green C. Love against Edwin Lindstedt to compel specific performance of a contract to purchase land. The complaint alleges, in substance, that in October, 1914, plaintiff and defendant entered into a contract whereby plaintiff agreed to sell, and defendant to purchase, lots 7 and 16 in block 5, in Green C. Love's Addition to the City of Portland, for the sum of $1,650, to be paid November 7, 1914, upon the payment of which plaintiff was to execute to defendant a deed to the premises; that plaintiff has at all times been ready, able and willing to execute said deed, but that defendant refuses to accept it and to pay the purchase price, alleging as his sole reason therefor that plaintiff has not a marketable title in fee simple to said property. The complaint then sets forth at length plaintiff's chain of title, from which it appears that the land in question is a portion of a tract originally patented by the United States to Lewis Love, who in 1903 died seised of the property, bequeathing it by a will and codicil, the material parts of which will are substantially as follows:

"It is my purpose to will at this time all of my property, personal, real and mixed, to my legal heirs in the same proportion as the law would convey the same to them in the absence of any will by me reserving only the burial place where my wife is now buried and a strip of land two feet in width adjacent thereto on the west, north and east of said burial spot; and I hereby set aside said burial place and said two feet of land adjacent thereto forever as a resting place or burial spot for my wife and myself; said burial place joins Columbia Cemetery on the northwest corner, which said cemetery is in section 10, township 1 north of range 1 east, Willamette Meridian. My will is, and I direct that my estate shall be divided into six shares of equal value to be disposed of in the following manner, viz.: First: Devises to his son, Fred. D. Love, one of said shares. Second: Devises to his son, Green C. Love, one of said shares. Third: Devises to his son, Lewis P. Love one of said shares. Fourth: Devises to his grandson, Wm. King, a son of my deceased daughter, Malinda J. Shepard, one third of one of said shares. Fifth: Devises to his granddaughter, Matilda Shepard, wife of James Shepard, and a daughter of his deceased daughter, Malinda J. Shepard, one third of one of said shares. Sixth: Devises to his great-granddaughter, Hazel King, who is a minor child and a daughter of Albion King, deceased, who was a son of my deceased daughter, Malinda J. Shepard, one-third part of one of said shares. Seventh: Devises to his daughter, Mary C. Stafford, one of said shares. Devises one of said shares to the children of his deceased son, Wm. Love, to be divided among them as follows: L. W. Love, ⅕; Jno. A. Love, ⅕; Ulysses G. Love, ⅕; Chas. W. Love, ⅕; Frank P. Love, ⅕. It is my will and purpose that my estate shall be kept intact and not distributed to my devisees until January 1, 1907. I direct that my executors shall proceed to administer upon my estate at once after my demise, and having in due time closed up my estate as executors that then my estate shall pass to them as trustees to be held in trust for my said devisees till

January 1, 1907, and managed by them as such trustees till the time of final distribution. I direct that my trustees, T. T. Struble, Philo Hoolbrook and H. C. Breeden, from time to time as the receipts of my estate may exceed the expeditures, such portion thereof as in the judgment of my said trustees can safely be distributed, and paid to the devisees *pro rata,* not oftener than two times in each twelve months. I direct that my trustees make final distribution of my estate on January 1, 1907, or as soon thereafter as practicable and if my devisees can agree said distribution can be a division of the property by such agreement, but if they cannot so agree, then my trustees shall make a division of the property according to the shares and parts of shares in my estate and my devisees can cast lots for their several interests. Directs that in case any executor fails to serve, the remaining ones or one shall have full power.''

The codicil is as follows:

''No. 1. I, Lewis Love, of Portland, Oregon, do make this codicil to my will. I hereby expressly confirm my last will, dated January 5, 1899, excepting in so far as the disposition of my property is changed by this codicil. First: I hereby will, decree, and declare that the devise or legacy to my daughter, Mary C. Stafford, in my said will, shall be for her sole and separate use, independent of her husband at all times, and that at her death the said devise or legacy to her shall go to her children, share and share alike. Second: I hereby will, decree, and declare that the said devise or legacy, in my said will, to my son, Fred D. Love, shall be for his sole and separate use, independent of his wife, at all times, and that at his death the said devise or legacy shall go to his children share and share alike. Third: I hereby will, decree, and declare that the devise or legacy, in my said will, to my son, Green C. Love, shall be for his sole and separate use, independent of his wife, at all times, and that in case of his death without lawful issue, born alive, and living at the time of his death, then the said devise

or legacy to him, shall belong and go to the remaining devisees of my said will in proportion as they hold of the shares or parts of my said will. Lastly: I declare that this is a codicil to my will and that this is the only codicil I have made, and I hereby declare my said will of date January 5, 1899, to be my last will and testament, and also hereby reaffirm the same in every particular except as modified by this codicil, which codicil is to be attached to the said will."

The said trustees named in the will duly divided the property of Lewis Love among the various persons mentioned therein, in accordance with the provisions thereof; and the respective shares so allotted to the several parties were duly accepted by them as being a proper and lawful division of said estate in conformity with the provisions of the said will. Thereafter the said trustees commenced an action in the Circuit Court of the State of Oregon, for the county of Multnomah, for the purpose of having the division and allotment of said estate confirmed by the decree of said court. Upon the hearing the court set apart to plaintiff as his one-sixth interest a parcel of real property consisting of 126 acres, and held that the lots in controversy are included within the boundaries of said tract, and that the trustees under the will conveyed it to him in conformity with said decree. The complaint then shows: That Fred D. Love, a single man, Matilda Shepard and husband, William King and wife, Lewis P. Love and wife, Hazel King and husband, Mary C. Stafford, a widow, L. W. Love and wife, John A. Love and wife, Ulysses G. Love, a single man, Frank P. Love and wife, Charles W. Love and wife, and all the children of Mary C. Stafford, and of Fred D. Love, have conveyed their interest in said tract to plaintiff; that Mary C. Stafford is 74 years old, and will have

no more children; that Fred. A. Love is 68 years old; that plaintiff is 66 years old; that plaintiff has no children living, but has two grandchildren, both of age, who have conveyed their interests in said tract to plaintiff. There was a prayer that plaintiff be decreed to be the owner in fee of the property; that his title be adjudged to be marketable, and that defendant be required to specifically perform his contract of purchase. The defendant demurred to the complaint, his demurrer being as follows:

"The defendant demurs to the complaint herein for the reason and on the ground that said complaint does not state facts sufficient to constitute a cause of action. Defendant assigns as the reason why said complaint does not state a cause of action the fact that it shows upon its face that plaintiff's title is not a marketable title, for the reason that it appears that there are outstanding contingent interests in the said real estate in persons yet unborn, to wit, in the possible issue of the plaintiff and in the possible issue of Mary C. Stafford and Fred D. Love."

Said demurrer being overruled, defendant declined to further plead, and a decree was rendered against him as prayed for, from which decree he appeals.

AFFIRMED.

For appellant there was a brief submitted by *Mr. Edwin Lindstedt.*

For respondent there was a brief over the names of *Mr. Guy C. H. Corliss* and *Mr. Arthur Langguth,* with an oral argument by *Mr. Corliss.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1–4. One phase of this case was before the court in *Love* v. *Walker,* 59 Or. 95 (115 Pac. 296), and we there

held that the will and codicil gave plaintiff a life estate in the property with a remainder over to his issue. Frank Souers and Inita Souers, now Inita Souers Dixon, the grandchildren of plaintiff, were living at the time of the death of Lewis Love, and they therefore had a contingent remainder, because the fee in any event could only vest in such of them as survived plaintiff: 1 Tiffany, Real Property, § 120. The remainder over to the devisees is a contingent remainder, being conditional upon an event which may never occur, namely, the death of plaintiff without issue surviving him. Nevertheless, the devisees had a vested interest in the contingent remainder which they could convey: *Dunwoodie* v. *Reed,* 3 Serg. & R. (Pa.) 435; *Putnam* v. *Story,* 132 Mass. 205. The case first cited is conclusive as showing that where there are alternative remainders, and the vesting of the second depends upon the failure of the first, and the same contingency decides which one of the two alternative remainders shall take effect in possession, the rule that a remainder cannot be limited after a fee has no application. In the instant case the remainder over to the issue of plaintiff in case of his death, they surviving, and the further provision for a remainder over to the devisees of decedent in case no issue of plaintiff should be alive at his death, are alternative remainders conditioned upon the occurrence of one contingency, namely, the death of plaintiff; and, under the rule last stated, the bequest to the devisees of decedent constitutes a contingent remainder and not an executory devise: *Dunwoodie* v. *Reed, supra.* The courts will, if possible, construe a future estate to be a contingent remainder rather than an executory devise: 40 Cyc. 1645; *Burleigh* v. *Clough,* 52 N. H. 267 (13 Am. Rep. 23); *Waddell* v. *Rattew,* 5 Rawle (Pa.), 231; *Watson* v. *Smith,*

110 N. C. 6 (14 S. E. 640, 28 Am. St. Rep. 665).   At
common law all contingent estates could be released to
the tenant for life: 1 Tiffany, Real Property, § 129(b).
Under the more modern doctrine all estates in land,
whether in fee or remainder, may be conveyed by deed.
Some of the authorities hold that such deeds operate
only equitably by way of estoppel, and others, that
the contingent interest passes directly.   The latter we
think the better rule in this state as being more in
conformity with the spirit of our Code: Section 7100,
L. O. L.; 1 Tiffany, Real Property, pp. 306, 307.   The
interest of possible unborn children of plaintiff is a
contingent remainder, as is also the interest of possi-
ble unborn children of Fred D. Love, and, with the
exception of such unborn children, the interest given
to the other devisees in the will, while contingent as to
the event which will cause it to devolve, is a vested in-
terest so far as the persons who are to enjoy it are
concerned.

5. This brings us to a consideration of the effect of
the conveyances of the grandchildren of plaintiff and
of those of the devisees upon the contingent remainder
of the possible unborn children of plaintiff and Fred
D. Love; there being no such possibility in the case of
Mrs. Stafford, who is 74 years old.   If plaintiff should
die leaving only these two grandchildren, or one of
them, surviving him, there is no question but that by
their conveyance the title in fee would be in his estate;
and the remainder over to the devisees would fail.
Remote contingent remainders not being favored in
law, it has always been in the power of the tenant for
life to extinguish his life tenancy and convert it into
a fee simple by merging it with the ultimate estate;
and this is what has happened here.   The plaintiff has
a conveyance from every living being upon which the

estate could devolve upon termination of his life estate. These interests, contingent as to their occurrence, but vested as to the persons who should enjoy them, have become merged with the life estate, and thereby remainders remotely possible are destroyed. The reason for this is that the conveyance of the ultimate estate destroys the life estate, and, as the contingent remainders are predicated upon the life estate, they fall with the foundation upon which they are built. "Contingent remainders may be defeated, by destroying or determining the particular estate upon which they depend, before the contingency happens whereby they become vested. Therefore, when there is a tenant for life, with divers remainders in contingency, he may, not only by his death, but by alienation, surrender or other methods, destroy and determine his own life estate before any of those remainders vest; the consequence of which is that he utterly defeats them all": 2 Blackstone, p. 172. For this reason Blackstone relates that a device was invented of interposing trustees having a legal estate upon which the contingent remainders might rest to preserve them from annihilation by a merger of the life estate. The rule is thus stated in 4 Kent, Com. (10 ed.), page 284:

"If the particular estate determine, or be destroyed before the contingency happens on which the expectant estate depended, and leave no right of entry, the remainder is annihilated. * * The particular estate in the tenant in tail, or for life, may be destroyed by feoffment or fine; for these conveyances gain a fee by disseisin, and leave no particular estate in esse, or in right, to support the contingent remainder. (d) So, if the tenant for life disclaimed on record, as by a fine, a forfeiture was incurred upon feudal principles; and if the owner of the next vested estate of freehold entered for the forfeiture, the contingent remainder was

destroyed.  (a) A merger, by the act of the parties, of the particular estate, is also equally effectual as a fine to destroy a contingent remainder.  (b) But with respect to this doctrine of merger, there are some nice distinctions arising out of the case of the inheritance becoming united to the general estate for life by descent; for, as a general rule, the contingent remainder is destroyed by the descent of the inheritance on the particular tenant for life.  Out of indulgence, however, to last wills, the law makes this exception: That if the descent from the testator or the particular tenant be immediate, there is no merger; as if A devises to B for life, remainder to his first son unborn, and dies, and the land descends on B as heir at law.  Here the descent is immediate.  But if the fee, on the death of A had descended on C, and at his death on B, here the descent from A would be only mediate, and the contingent remainder to the unborn son of B would be destroyed by merger of the particular estate on the accession of the inheritance.  Mr. Fearne (c) vindicates this distinction, and reconciles the jarring cases by it; and it has been since judicially established, in *Crump* v. *Norwood* [7 Taunt. 362] (d).''

To like effect, see *Bennett* v. *Morris,* 5 Rawle (Pa.), 9; *Dunwoodie* v. *Reed, supra; Archer* v. *Jacobs,* 125 Iowa, 467 (101 N. W. 195).

Upon the whole case we are satisfied that by the conveyances before mentioned the contingent remainders of possible unborn children of plaintiff and Fred D. Love have been annihilated, that plaintiff is the owner in fee simple of the property in controversy, and that his title thereto is marketable.  The decree of the Circuit Court is therefore affirmed.          AFFIRMED.

MR. JUSTICE BEAN took no part in the consideration of this case.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.

MR. JUSTICE BURNETT concurs in the result.