(No. 13534.—Decree affirmed.)

MINNIE L. ARGILE, Appellant, *vs.* BERTRAND H. FULTON
*et al.* Appellees.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. DEEDS—*deed must take effect upon its execution and delivery.*
A deed, to be valid, must take effect upon its execution and delivery,
and a deed to land which is not to take effect until the death of the
grantor is void as being an attempt to make a testamentary dispo-
sition of the property without complying with the Statute of Wills.

2. SAME—*fact that deed is made in lieu of will does not render
it invalid.* The mere fact that a deed is executed to avoid the ex-
pense and necessary court work in probating a will does not render
the deed invalid.

3. SAME—*delivered deeds are valid although grantees are not to
take possession until after grantor's death.* Deeds from a mother
to her children, in which her husband joins, and which are placed
in escrow with the full understanding that the grantors then give
up all right to control the deeds, are valid, even though the grantees
are not to take their lands until after their mother's death.

APPEAL from the Circuit Court of Cook county; the
Hon. GEORGE F. BARRETT, Judge, presiding.

EDMUND P. KELLY, for appellant.

FRANCIS A. HARPER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant filed a bill in the circuit court of Cook county
for the partition of a farm of about 145 acres in said
county. After the pleadings were settled a hearing was had
before the chancellor and the bill was dismissed for want
of equity. From that decree this appeal was prayed.

The record shows that on January 23, 1919, Hulda Ful-
ton was the owner of said farm and resided thereon with
her husband; that on that day she executed a deed con-
veying the land to her son, Bertrand H. Fulton, one of

the appellees herein; that she died about two weeks later, leaving her surviving her husband, John Fulton, the son, Bertrand, and two daughters, Lulu M. Rogers and appellant, Minnie L. Argile, as her only heirs-at-law; that at the time the deed was made, and at her death, the son, Bertrand, and the daughter Lulu, were both residing on the farm with the mother and father; that on January 23, 1919, she sent her son to Tinley Park to ask John C. Andres, cashier of a bank in that village, to come out and see her about drawing some papers. The evidence shows that Andres had been well acquainted with Mrs. Fulton, her husband and the three children for many years, some of them having had accounts at various times at the bank of which he was cashier; that he went out to the Fulton farm with Bertrand and found Mrs. Fulton confined to her bed. The allegations of the bill are that Mrs. Fulton was then fatally ill of an incurable disease. Andres testified that when he was taken into the room where she was lying the others left, so that he was alone with Mrs. Fulton and John Fulton, her husband; that she told him she wished to draw some papers as to her property; that she wanted to give the farm they were then on to her son and the house and lot in Tinley Park to her daughter Lulu and wanted to give $1000 to her daughter Minnie, who is the appellant herein. He testified that he suggested to her that the best way to give the property to the children as she had stated would be for her to execute a deed of the farm to her son and a deed of the house and lot in Tinley Park to Lulu, and she said all right, if that was the best way; that he told her he wanted the old deeds to the property in order to get the correct description; that she sent for her daughter Lulu and asked her to bring the deeds, and when they were brought Andres took them back to his office in the bank and drew one deed to the farm from Mrs. Fulton and her husband to Bertrand and a second deed to the house and lot in Tinley Park to the daughter Lulu; that

after supper he went back, as had been agreed, to the Fulton farm. It appears that at the first visit he suggested to Mrs. Fulton that if she wanted to divide her property somewhat evenly between her children, it might be a good idea, if she thought it wise, to have the son, who received the farm, give a note for $1000 to Mrs. Rogers, who received the house in the village, and a note for $3000 to Mrs. Argile. Mrs. Fulton said she would like to have this done, and it appears that Andres on the evening visit brought two notes, one for $1000 and the other for $3000. Andres testified that after reading the deeds Bertrand and Mrs. Rogers were called in and there was general talk about the deeds and the two notes, and Bertrand agreed to sign the notes and live up to whatever his mother wanted him to do; that Mrs. Fulton and her husband then signed and acknowledged the two deeds, and there was some talk by the mother with the son as to whether he could pay the notes, which were drawn, as she had suggested, to be due in five years after her death; that Bertrand said he was willing and signed the notes. Andres testified that he completed the acknowledgment and put his notarial seal on the two deeds and then told Bertrand and Lulu that the deeds belonged to them; that there had been talk about Andres keeping the two notes, and Bertrand said that if he was going to keep the notes he might as well keep the deeds also, and the mother assented to this. Andres testified that during the conversation he stated that he could, of course, keep these deeds in escrow until the death of Mrs. Fulton and then give them to the son and daughter; that there was also some talk between the son and Andres about the latter taking the deeds to Chicago to have them recorded, as on account of business he went to Chicago every week. Andres testified that he told Mrs. Fulton that if he held the papers it would be understood that she released all claim to them; that she said that was all right,—that was the way she wanted it,—and that the husband agreed with this

statement.    There was some talk, also, with reference to the father having a life interest in the farm, and Bertrand said that he was perfectly willing to sign any paper to that effect that Andres would draw, while the father said there was no necessity for drawing any paper, as his son had always treated him right in the past and surely would in the future.    Andres said that he did not have any experience in drawing that kind of a paper and advised them to have a lawyer draft the proper instrument giving a life estate to the father.    When Andres left that night he took the two deeds and the two notes with him and kept those papers in his possession in the bank until after the mother's death and did not record either of the deeds.    He gave the deed to the farm in question to the son several weeks after the mother's death.    Apparently soon after the mother's death the son understood that appellant, his sister, was not satisfied with the execution of the papers in question and intended to contest the validity of the deed to the farm.

It is argued by counsel for appellant that the court should not have dismissed the bill for want of equity, as the evidence in the record shows that the two deeds and the two notes drawn by Andres, and the transactions which they represent, were all testamentary in character and designed to take the place of and operate as a will, while counsel for appellees just as strongly argues that the deeds were delivered to the respective grantees at the time they were executed by Mrs. Fulton and her husband, and that if the evidence does not show clearly that they were delivered at that time to the grantees they surely were delivered to Andres, to be held by him in escrow, with the notes, until the mother's death.    There can be no question that a deed to be valid must take effect upon its execution and delivery or not at all.    A deed to land which is not to take effect until the death of the grantor is void, as being an attempt to make a testamentary disposition of the property without complying with the Statute of Wills.    "If the intended

disposition of property is not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it is executed in conformity with the Statute of Wills." (*Benner* v. *Bailey*, 234 Ill. 79.) "To constitute delivery of a deed it must clearly appear that it was the intention of the grantor that the deed should pass the title at the time. * * * A deed for an interest in land must take effect upon its execution and delivery or not at all." *Wilson* v. *Wilson*, 158 Ill. 567.

There was some talk at the time between Andres, Mrs. Fulton and her husband that they wanted to avoid the expense and delay of probating a will and for that reason were better satisfied to settle the matter by deeds rather than by will, but the mere fact that deeds are executed to avoid the expense and necessary court work in probating a will does not render such deeds invalid. In *Young* v. *Payne*, 283 Ill. 649, the court said (p. 653): "While it is true, as the deed states, that it was made in lieu of a will, yet such statement would not render the deed void as a testamentary instrument." To the same effect are *Latimer* v. *Latimer*, 174 Ill. 418, and *Hudson* v. *Hudson*, 287 id. 286. While the testimony of Andres may not be entirely clear, there can be no question, from the evidence, that the grantors, Mrs. Fulton and her husband, fully understood that they were giving up all right to control the deeds after they executed them, and both she and her husband wanted the transaction to be arranged in that manner.

We find no basis in the evidence to support the argument of counsel for appellant that if Mrs. Fulton had recovered from her illness she would have had a right to retake possession of the deeds and set aside the transaction. Beyond doubt she understood, as already stated, that she was giving up all right to any possession or control over these deeds and that she had no further interest in either of the pieces of property conveyed by the deeds. The evidence clearly shows that she did not object to having the

deeds recorded at once. In our judgment, the only fair construction of all the testimony as to what took place at this time is, that the grantors, Mrs. Fulton and her husband, understood that these deeds were to be handed to the respective grantees after her death and that she could not recall them. "When a grantor makes a deed and places it in the hands of a third person to be delivered to the grantee upon the death of the grantor, and the grantor surrenders all control and dominion over the deed and retains no right to reclaim it, such act constitutes a complete and valid delivery, and the deed takes effect, not at the death of the grantor, but immediately upon being delivered to the third person." (*Bullard* v. *Suedmeier,* 291 Ill. 400, and numerous cases there cited.) It was understood here, as it was in the case just referred to, that the fact that the grantees should not take possession and actual enjoyment of their land until after the grantor's death did not make the deeds testamentary in character.

Counsel for appellant has cited numerous authorities which he argues are not consistent with this conclusion, but we deem none of them directly in point. Most of them are cases where the court holds, under the particular facts, that the deeds were not delivered, either in escrow or directly, to the grantees. We agree with counsel that the particular force and application of the rules of law upon the facts of a case must be decided and controlled by the facts of the individual case.

Whether the appellant has a right to demand of the banker, Andres, the delivery of the $3000 note to her if the decree of the trial court is affirmed is not directly involved in this case, and the only bearing that question has is whether or not the execution of this note—a part of the transaction in question—tends to show that the deeds were intended to be delivered at the time the papers were signed and acknowledged. We are of the opinion that it was the clear intention of Mrs. Fulton that the notes should

be delivered by Andres to the respective daughters after her death.

We find no error in the record. The decree of the circuit court will therefore be affirmed.    *Decree affirmed.*