JOSEPH W. SCOTT, JR., WARREN F. SCOTT, JOHN MURDOCK SCOTT, CLARENCE SCOTT, EMMA W. SCOTT, ALEXINA E. HAZELTON AND FRANK N. HAZELTON, HER HUSBAND, *Plaintiffs in Error*, v. MARGARET C. FAIRLIE, JOHN ARCHIBALD FAIRLIE, ANDREW MILLER FAIRLIE, AGNES EDMUND RICKETTS, AND ROBERT RICKETTS, HER HUSBAND, *Defendants in Error*.

Opinion Filed April 4, 1921.

Petition for Rehearing Denied May 16, 1921.

1. Plaintiff in ejectment may recover against one in possession without title upon proof of prior possession in himself or proof of a grant to him from a grantor in possession.

2. Where both parties in ejectment claim title from a common source to the property involved defendant is estopped to show an outstanding title thereto in a third party.

3. Under the provisions of Section 2455, General Statutes of 1906, Compiled Laws, 1914, deeds executed in the manner

required by law operate under the statute of uses to vest title in the grantee, provided livery of seizin can be lawfully made of the land conveyed at the time of the execution of the deed.

4.  Whether an estate in remainder is vested or contingent, a conveyance by the life tenant passes only the life estate and does not operate to destroy the estate in remainder.

5.  The general rule is that the statute of limitations does not begin to run against a remainderman until his right of possession accrues.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Reversed.

*R. E. Stillman* and *L. S. Gaulden,* for Plaintiffs in Error.

*Cockrell & Cockrell,* for Defendants in Error.

WEST, J.—This action is ejectment. It was brought on August 26, 1916. The declaration is in the statutory form. The plea is not guilty. By agreement the cause was submitted to and tried by the court without a jury. The finding and judgment were for defendants. Writ of error was taken to review the judgment.

To prove title and right of possession in them plaintiffs introduced evidence tending to prove claim of ownership and possession of the property by Joseph W. Scott, Sr., and possession by Joseph W. Scott, Jr., and Emma Jane Scott, his wife, it appearing that their oldest child, Warren F. Scott, one of the plaintiffs, was born in the house located upon this property; a deed of conveyance for the

property from Joseph W. Scott and Eliza Ann Scott, his wife, to Emma Jane Scott, wife of Joseph W. Scott, Jr., dated September 15, 1871, by which the grantors conveyed the property described "unto the said Emma Jane Scott, for and during her natural life, and after her death to her children, by the said Joseph W. Scott, Junior, if any there be, their heirs and assigns forever, and if she shall leave no such children, her surviving, then to her said husband, the said Joseph W. Scott, Junior, his heirs and assigns, forever." The habendum clause contains substantially the same provision. It is the same except that it omits the words "if any there be" in referring to the children of the grantee of the life estate to whom the estate in remainder was granted.

Plaintiffs proved also that there were born to Emma Jane Scott, the holder of the life estate in the property, by Joseph W. Scott, Jr., her husband, children as follows: Warren F. Scott, born about March 12, 1872; an infant stillborn; John Murdock Scott, born about November 6, 1875; Clarence Scott, born about April 8, 1878; James C. Scott, born about September, 1880, lived about fifteen years and died; Alexina E. Scott (Mrs. Hazelton) born about April 3, 1885; Emma Scott, born about February 12, 1888; Leah Scott, born about 1891 or 1892, lived a few months and died; and that the said Emma Jane Scott died on June 5, 1915, subsequently to the deaths of the two children.

The defendants assert title and right of possession to the property in controversy by virtue of a special master's deed dated August 4, 1879, issued in a suit brought by Henry B. Holbrook against Joseph W. Scott, Jr., and Emma Jane Scott, his wife, to foreclose a mortgage upon such property made by the latter to the former on June

26, 1878, by which deed the property was conveyed by the special master to Thomas V. Cashen; a quit-claim deed for the property dated .......... 1882, made by Joseph W. Scott, Jr., and Emma Jane Scott, his wife, to Thomas V. Cashen; articles of agreement dated April 1, 1882, between Thomas V. Cashen and James Mitchel Fairlie and Margaret Simpson Millie Fairlie, his wife, the ancestors of defendants, by which the former agreed to convey the said property to the latter; a quit-claim deed pursuant thereto to Margaret Simpson Millie Fairlie dated October 10, 1884; with proof of actual occupancy and possession of such property under claim of title thereto by James Mitchel Fairlie and Margaret Simpson Millie Fairlie and their descendants, the defendants, since early in the year 1882 to the time of the trial of the case. Defendants proved also the death intestate of Margaret Simpson Millie Fairlie on October 9, 1888, and the death of James Mitchel Fairlie on October 17, 1888, leaving a will devising to his children the interest which he inherited from his wife in the property; and that the defendants were the children of James Mitchel Fairlie and Margaret Simpson Millie Fairlie. It seems to be established that the Fairlies went into possession of the property pursuant to a purchase of it when adjacent property occupied by them was destroyed by fire, and in the absence of proof to the contrary we may assume that the purchase under which they entered was that evidenced by the deeds offered in evidence by them.

Error is assigned upon the refusal to grant plaintiffs' motion for a finding and judgment in their favor, the granting of defendants' motion for a finding and judgment in favor of defendants, and in overruling plaintiffs' motion for new trial.

Several pages of the brief of counsel for defendants in error are devoted to a discussion of the proposition that no Scott ever had title to the property in controversy. But it is clear, we think, that plaintiffs proved such prior possession of the property by Joseph W. Scott, Jr., and Joseph W. Scott, Sr., the grantor of plantiffs, to warrant a finding and judgment in their favor provided it is found that the deed from Joseph W. Scott, Sr., vested an estate in remainder to the property in them and authorized them to take possession of it upon the death of Emma Jane Scott, the life tenant, upon the theory that a plaintiff in ejectment may recover against one in possession without title upon proof of prior possession in himself or proof of a grant to him from a grantor in possession. Ashmead et al v. Wilson, Exr., 22 Fla. 255; Jackson et al v. Haisley et al., 35 Fla. 587, 17 South. Rep. 631. This view of the case makes it unnecessary to consider any question pertaining to the title relied upon by plaintiffs antedating the conveyance from Joseph W. Scott, Sr., under which plaintiffs claim, although it should be remarked that plaintiffs contend that they did prove title by valid mesne conveyances from the United States Government to their predecessor, Joseph W. Scott, Sr.

In addition to what has just been said, it appears from the evidence introduced by defendants that they claim title under a special master's deed issued in a suit brought to foreclose a mortgage on the property in controversy made by Joseph W. Scott, Jr., and Emma Jane Scott, his wife, and under a quit-claim deed for the property made by the same parties to a predecessor in title of defendants. And upon the doctrine that where both parties in ejectment claim title from a common source to the property involved, defendant is estopped to show an

outstanding title thereto in a third party, the defense cannot now be heard to successfully assert that no Scott ever had title to the property heer in controversy. Dayton v. Patton, 80 Fla. 763, 86 South. Rep. 702; Rhodus & Fleming v. Heffernan et al., 47 Fla. 206, 36 South. Rep. 572; Mansfield & Bishop v. Johnson, 51 Fla. 239, 40 South. Rep. 196.

The deed under which plaintiffs now assert title and ownership of the property in controversy is dated September 15, 1871. The first child of Emma Scott, the grantee of the life estate, by Joseph W. Scott, Jr., her husband, was born March 12, 1872, six months after the execution of the deed, and it is urged by plaintiffs that upon the birth of this child, if not at the time of the execution of the deed, the child being then *in ventre se mere,* the estate in remainder created by the deed became vested and that this child and others born from time to time thereafter and their successors in title had, under the terms of the deed, a vested remainder in fee in the property and were entitled to its possession upon the termination of the life estate created by the deed.

The view we take of the case, however, renders it unnecessary to determine whether the language employed created a vested or contingent remainder in fee in plaintiffs. The point of difference between the two in so far as this case would be affected by it, namely, the difference in effect of a conveyance by a life tenant upon the estate in remainder, has been changed in England and very generally in this country by statute. Love v. Linstedt, 76 Ore. 66, 147 Pac. Rep. 935, 1917A Ann. Cas. 898 *and note.* In this State, under the provisions of Section 2455, General Statutes of 1906, Compiled Laws, 1914, deeds executed in the manner required by law operate under

the statute of uses to vest title in the grantee, provided livery of seizin can be lawfully made of the land conveyed at the time of the execution of the deed. Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 South. Rep. 931; Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567; Vincent v. Hines, 79 Fla. 564, 84 South. Rep. 614; so that whether the estate in remainder was vested or contingent, a conveyance by the life tenant passed only the life estate and did not operate to destroy the estate in remainder. Hall v. Condon, 164 Ala. 393, 51 South. Rep. 20; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 South. Rep. 289; Vidmer v. Lloyd, 193 Ala. 386, 69 South. Rep. 480, 1917A Ann. Cas. 576, and note.

It is said that although this may be true, plaintiffs have lost title and right to recover possession of the property because of the adverse possession and claim of ownership by defendants. That defendants have maintained actual possession of the property under claim of ownership in themselves for the statutory period necessary to vest the title in them seems not to be disputed and there is competent evidence in the record sufficient to establish this fact, but the general rule is that the statute of limitations does not begin to run against a remainderman until his right of possession acrues, that is to say, until the termination of the life estate, and as we have seen the life tenant lived until June 5, 1915. Dallas Compress Co. v. Smith, *supra;* Blakeney v. DuBose, 167 Ala. 627, 52 South. Rep. 746; Hall v. Condon, *supra;* Tilson v. Thompson (Mass.) 10 Pick. 359; Miller v. Ewing (Mass.) 6 Cush. 34; Wallingford v. Hearl, 15 Mass. 471; Wells v. Prince, 9 Mass. 507; Jackson v. Mancius (N. Y.) 2 Wend. 357; Jackson v. Schoonmaker (N. Y.) 4 Johns, 390; Devyr v. Schaffer, 55 N. Y. 446. There are, however, some modifications of this rule and this court has held in effect

that where there is clear proof of actual knowledge brought home to remaindermen of abandonment by a life tenant as such of his claim to the property and the setting up of title in the property hostile to that of remaindermen, the statute may operate to divest the title of the remaindermen and vest title in the property to such adverse claimant. Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318.

There is proof in this case that defendants and their ancestors have been in the actual possession of this property since early in the year 1882; that they have added value to the property from time to time by placing improvements upon it; that plaintiffs have resided in the same community and have been cognizant of defendants' occupancy and improvement of the property during all this time; but there is no clear proof in the record of actual knowledge brought home to the remaindermen, the plaintiffs, of a claim to the property by defendants hostile to that of such remaindermen. There is nothing in defendants' occupancy of the property for the period shown inconsistent with the right of occupancy derived from their ownership of the life estate in such property acquired by purchase. There is evidence to the effect that defendants received a letter in December, 1906, or January, 1907, from an attorney purporting to represent plaintiffs and that in response to such letter one of the defendants called at the office of the attorney and denied to him that plaintiffs had any interest whatever in the property, but there is no proof that any of the plaintiffs were present at this interview or that this attorney was authorized to represent them or that he ever communicated to them the assertion by defendants that plaintiffs had no interest in the property. It cannot therefore be said that if defendants' claim to the property was hostile

to plaintiffs, the remaindermen, actual knowledge of such claim was brought home to them before the termination of the life estate. This being true, the law neither conferred any right nor imposed any duty upon plaintiffs to take any action essential to an assertion of their ownership. Their right of possession did not accrue until the death of the life tenant, June 5, 1915, and, as we have seen, the action to recover possession was promptly brought thereafter.

From what has been said, it follows that the finding and judgment for defendants were error and the judgment must be reversed.

Reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.