## BECK *v.* BELCHER.

No. 7963. MARCH 12, 1931.

*R. L. Maynard,* for plaintiff in error.
*Ellis, Webb & Ellis,* contra.

RUSSELL, C. J.  The question in this case is the construction of the written instrument set forth in the statement of facts.  In modern jurisprudence, the crucial test of every written instrument is the ascertainment and enforcement of the intention of the parties.  Forms of speech and verbal phrases are of but little conse-

quence, if the real intention of the parties at the time of the execution of the instrument can be readily ascertained and given effect. It is apparent in the present case, from the form of the instrument, that it was not intended that the writing should be testamentary in character. It bespeaks a consideration of $1.00 and the mutual covenants referred to in the istrument. It uses the word "convey," as well as the customary "grant, bargain, and sell," which terms are entirely inapplicable to wills. The larger lot of land was derived from the mother of Mrs. Grace Beck Belcher and the former wife of J. C. Beck. Mrs. Belcher was an equal heir with her father in the property, and it can be readily seen that she would not have conveyed an estate for life to her father in her moiety of her mother's property unless there had been an additional consideration. This additional consideration is found in the fact that she was her father's daughter; and so the instrument evidences the father giving the fee in his lot (possession to be postponed until his death) to his daughter, and the daughter giving to her father the use for life of her half interest in her mother's house and lot.

The trial judge did not err in restraining the proceedings for setting apart the year's support. Learned counsel for plaintiff in error admits, if the paper can be properly construed as a deed, that the judgment was correct. It must be said that to hold that the instrument is testamentary in character (inasmuch as it is witnessed only by two witnesses) would render it absolutely void, and thus entirely defeat the intention of those who entered into the agreement and executed it in writing. J. C. Beck delivered the deed to his daughter almost immediately after its execution, and it was on record for several years before the death of J. C. Beck on April 12, 1930. Counsel for plaintiff in error lay much stress on the use of the word "title" as embraced in the descriptive terms used in the instrument under consideration. It is insisted that inasmuch as J. C. Beck retained exclusive right, title, and possession during his lifetime, and at his death the title to the property vested in Mrs. Grace Beck Belcher, the writing was rendered testamentary in character, and was not a deed. This part of the deed, construed in connection with the instrument as a whole, shows unquestionably that it was a deed and not a will. Language of like character has frequently been dealt with by this court. In the

recent case of *Livingston* v. *Aldridge,* 164 *Ga.* 201 (138 S. E. 78), it was held, quoting from *Collier* v. *Carter,* 146 *Ga.* 476 (91 S. E. 551, 11 A. L. R. 1), and citing *Crawford* v. *Thomas,* 150 *Ga.* 435 (104 S. E. 211) : "Where an instrument in the form of and attested as a deed contains a clause that it is 'to go into effect at' the signer's death, and where there is no other indication as to the intention of the signer, and the paper is duly delivered, it will be construed to be a deed postponing possession." In the earlier case of *White* v. *Hopkins,* 80 *Ga.* 154 (4 S. E. 863), the identical question in the case at bar was before this court. Mr. Justice Simmons, delivering the opinion of the court, said : "The question is, is this instrument a deed or a will? In order to determine that question, it is necessary for us to ascertain the intention of the maker, if we can do so, from the reading of the whole paper together. It is the duty of courts to construe instruments of this kind in such manner as to carry out the intention of the maker, if possible. The true test to determine whether the instrument is a deed or a will is, whether it is to take effect immediatly, or to take effect only after the death of the maker. . . Taking this rule for our guidance, let us look at this instrument and determine from it whether it conveys a present estate and is to take effect immediately, or whether it is to take effect after the death of the maker." Judge Simmons then refers to the form as being that of a deed; this instrument, as the one now before us, has therein "this indenture," and recites that the grantor has granted, sold, aliened, and conveyed to the grantee. The instrument then before the court contained a warranty of title as in the present instance, and it was signed, sealed, and delivered, and witnessed and attested by two witnesses. Proceeding, Mr. Justice Simmons said : "But it was argued that the words in the habendum clause, 'That the title to the above-described tract of land' should 'still remain in the said Lemuel Hopkins for and during his lifetime, and at his death immediately vest in the said Lewis Hopkins,' etc., show that it was not to take effect until after his death. We do not agree with this construction. We think that the words used in the habendum clause are simply a reservation of a life-estate in the grantor. He had already conveyed the title to the land to the grantee; and he could not pass the title into the grantee and reserve it in himself at the same time. It was competent for him to reserve a

life-estate in the land, and to retain possession of the same until his death. It was competent for him to convey an estate to the grantee upon a condition *subsequent*, to be defeated in the event that the condition was not complied with. These words make this instrument defeasible, subject to be defeated upon the failure of the grantee to perform his part of the contract. To give the paper this construction, the whole of the instrument will stand, and the intention of the grantor will thus be carried out. To construe it as a will, the intention of the grantor would be defeated, because it can not be set up as a will, having only two witnesses. Upon this subject and sustaining these views, see 3 *Kelly*, 460, 4 *Ga.* 75; 6 *Ga.* 526; 15 *Ga.* 103; 29 *Ga.* 677; 22 *Ga.* 472; Id. 462; Id. 491; 31 *Ga.* 720. In this last case the words of the deed were 'do give, grant, and convey' certain property, 'to have and to hold after my death the aforesaid property.' . . In 17 *Ga.* 234, the words were 'bargained, sold, and conveyed, and by these presents do bargain, sell, and convey to the said David, his heirs and assigns,' a certain negro girl, 'to be delivered to the said David at my death, and not before.' This was held 'to be to all intents and purposes a sale for a valuable consideration, the seller reserving to himself a life-estate in the property.'" To the same effect see *Mays* v. *Fletcher*, 137 *Ga.* 27 (72 S. E. 408).

Taking into consideration the entire instrument, it must be classed as a deed, so as to prevent the writing from becoming inoperative, especially when in this case the parties to the instrument exchanged property. Mrs. Grace Beck Belcher granted to her father a life-estate in her whole interest in the property, and in turn J. C. Beck conveyed a present estate but postponed possession until his death to property which he owned. The parties to this instrument used the language, "for and in consideration of the sum of $1.00 cash in hand paid, and the mutual covenants by and between the parties to this contract, said parties have conveyed one to the other the property and interest therein as hereinafter set out." Such expressions are never used in a will. The deed was made upon a consideration, and shows by its terms that the parties *conveyed* one to the other the property described in the instrument.

*Judgment affirmed. All the Justices concur.*