Argued November 20, 1958, affirmed April 8, 1959

# HALLECK *v.* HALLECK ET AL
### 337 P. 2d 330

*W. C. Winslow,* Salem, argued the cause for appellants. With him on the brief was Norman K. Winslow, Salem.

*LaVerne Johnson,* Corvallis, argued the cause for respondent. With him on the brief were Huston & Thomas, Corvallis.

Before PERRY,* Chief Justice, ROSSMAN, McALLISTER** and O'CONNELL, Justices.

---

* Chief Justice when case was argued.
** Chief Justice when this decision was rendered.

O'CONNELL, J.

This is an action of ejectment. The plaintiff asserts that he has title to the property in question through the execution and delivery of a deed dated September 22, 1950 by which Charles A. Bickford, the grantor, conveyed the property "unto said T. H. Halleck and Theron H. Halleck, not as tenants in common but with the right of survivorship, their assigns and the heirs of such survivor," this language being a printed part of a deed form in wide use in this state. The deed records of Lincoln County show that Charles A. Bickford was the grantee named in a deed covering the same property dated two days earlier executed by T. H. Halleck, the father of the plaintiff, Theron H. Halleck. It was stipulated by the parties that T. H. Halleck was the owner of the property in question prior to September 20, 1950.

The defendant Frances E. Halleck is the widow of T. H. Halleck. The other defendants were joined simply because they were in possession of the property as tenants holding under the defendant, Frances E. Halleck. Hereafter we shall refer only to the latter defendant.

The defendant claims complete ownership in the property as the devisee under T. H. Halleck's will which was executed on September 7, 1951. In the alternative, defendant claims an undivided one-half interest by virtue of a deed executed on June 5, 1953 by T. H. Halleck to the defendant, the deed purporting to convey to her such an interest. T. H. Halleck died on October 7, 1953. In addition to traversing plaintiff's complaint the defendant seeks affirmative relief in equity to remove the cloud of plaintiff's deed from her title.

The defendant married T. H. Halleck after a rather short period of courtship which began when he was in the hospital at which the defendant worked as a nurse. She was 63 and he was 80 years of age at the time of their marriage. His letters indicate that this marriage, which was his third, was a very happy one. This may account for the fact that all of his estate except one dollar bequeathed to his son, was devised and bequeathed to the defendant. If the deeds referred to above were effective to create an interest in the plaintiff prior to his father's death, then, of course, the will could not affect that interest. However, the defendant contends that no interest passed to the plaintiff during his father's lifetime.

The trial court held that the Bickford deed which named T. H. Halleck and Theron H. Halleck as grantees vested the complete title in the plaintiff upon his father's death. This conclusion is attacked by the defendant on the following grounds: (1) that the Bickford deed relied upon as the source of plaintiff's title was neither delivered nor accepted in a legal sense; (2) that it was without consideration, and (3) that it was a "testamentary device which was never intended to pass any title to respondent in the lifetime of T. H. Halleck."

■■ We shall consider first the evidence relating to the execution of the deeds in September, 1950. It is undisputed that the plaintiff's father, T. H. Halleck, executed and delivered to Charles A. Bickford a deed describing the property in question. Thereafter Charles A. Bickford executed a deed to T. H. Halleck and the plaintiff in the form described above. Both deeds were recorded. The recording of a deed creates a presumption of delivery. If the deed is recorded by the grantor the presumption can be supported on

the ground that his conduct in placing the deed on record is evidence that he executed the deed with the intent to make it legally operative. *Lancaster v. May, as Administrator,* 194 Or 647, 243 P2d 268 (1952) (semble). If the deed is recorded by the grantee the presumption of delivery arises, not from the act of recording itself but from the grantee's possession of the deed. Tiffany, Real Property (3d ed), § 1044. Here the defendant alleges that T. H. Halleck caused both deeds to be recorded. He was of course the grantor of one deed and the grantee of the other. Accepting this allegation as true, T. H. Halleck's recording of the first deed, of which he was the grantor would create a presumption that he had effected a delivery to Bickford; his recording of the second deed, of which he was the grantee, would create a presumption of delivery to him arising out of his possession of the deed.

Perhaps it would be more realistic to construe the execution of these deeds as one transaction and to regard T. H. Halleck as the grantor for the purpose of applying the rule recognizing the presumption of delivery referred to above. However, it is unnecessary to rest the case upon this basis because there is sufficient evidence without the aid of the presumption to establish that delivery was accomplished. We are concerned here with evidence indicating the intention of T. H. Halleck in causing the deeds to be executed.

We commonly speak of the delivery of a deed. However, as the term is used in the law delivery is effected by a mental, not a physical process. Properly defined, delivery describes the passage of a property interest, normally the full legal title, from the grantor to the grantee. The interest passes if the grantor manifests the intention to pass it immediately—in the

case of transfers of interest in real property the intention to make legally operative a properly executed deed. American Law of Property, § 12.64; Tiffany, Real Property (3d ed), § 1034; *Lemon et ux v. Madden et al,* 205 Or 107, 284 P2d 1037 (1955); cf. *Witham v. Witham,* 156 Or 59, 66 P2d 281 (1937) noted 16 Or LRev 420 (1937).

The handing over of the deed to the grantee is significant only as evidence reflecting the intent of the grantor. Likewise the retention of the deed by the grantor is not controlling and it may be shown that in spite of the failure to transfer physically the deed to the grantee, the grantor intended the deed to have an immediate operative effect to pass all or a part of his interest in the land. *Fain v. Smith,* 14 Or 82, 12 P 365 (1886), cf. *Dickerson v. Murfield,* 183 Or 149, 191 P2d 380 (1948).

■ Occasionally it is said that the grantor must give up dominion and control over the deed. *Lancaster v. May,* as Administrator, supra. This means only that the grantor must intend to pass presently the interest which the deed purports to convey and thus deprive himself of control over that interest. *Fain v. Smith,* supra. Control by the grantor over the deed itself is evidence, of course, that he may not have intended to pass an interest to the grantee.

■ In the case at bar the deeds, which had been recorded, were placed in safe deposit box under the joint names of T. H. Halleck and the plaintiff. The fact that T. H. Halleck could obtain the deeds at his pleasure is of little importance in determining whether he intended to make the deeds effective in the transactions with Bickford because the deeds had been recorded. We think that this fact outweighs the implication of nondelivery arising out of the fact that the deeds

were available to the grantor. Lessee of *Mitchell v. Ryan,* 3 Ohio St 377 (1854); *Pentico v. Hays,* 75 Kan 76, 88 P 738 (1907), 9 LRA (NS) 224; contra, *Clowers v. Clemons,* 185 Ga 567, 196 SE 28 (1938).

■ What, then, is the evidence of T. H. Halleck's intent to pass an interest in the property to the plaintiff? The defendant contends that the only intent established was the intent to pass the title at the death of T. H. Halleck. It is asserted that the transaction in which Bickford was first the grantee and immediately thereafter the grantor was intended as a testamentary device, a substitute for a will, and consequently ineffective because the instruments were not executed in accordance with the formal requirements of our statute of wills. ORS 114.030. The defendant maintains that T. H. Halleck intended to retain the entire interest in the property until the moment of his death and that he regarded the deeds as effective only if he did not decide to dispose of the property in some other way before his death. If this latter contention is sound then of course the deeds were ineffective to accomplish such a purpose. We look then to T. H. Halleck's statements and conduct for evidence as to the time when he intended title to pass.

The defendant calls our attention to various statements made by T. H. Halleck which indicated his intent to avoid the necessity of including the land in the probate of his estate. The defendant, Frances E. Halleck, his widow testified that he told her that the purpose of executing the deeds was to "avoid probate." The same statement was made to two other persons who testified. He had mentioned to the defendant that he thought the amount he paid for probating his former wife's estate ($800) was too much. There was evidence that Bickford had stated to a Mr. Waterbury,

T. H. Halleck's attorney, that "the deed given by me to T. H. Halleck and Theron Halleck was given in lieu of and as a will."

Defendant makes reference to statements made by T. H. Halleck in letters to his son which, it is argued, indicate a testamentary intent. On one occasion, he referred to his interest in providing for the distribution of his estate at his death "without any recourse to the law," and that this be accomplished "without any court or lawyers." In one of these letters he reminded his son that "the property is deeded to us you and I and at my going away, becomes yours" and again "all of my property is deeded to the survivor of us when I am gon[e] it is yours without any recourse to law."

As evidence that T. H. Halleck intended to make the disposition of the property effective only at his death other circumstances are relied upon: his consciousness of his failing health and impending death; his effort to arrange for the disposition of his automobile, checking account, bank stock, and notes by the preparation of instruments in which he and the plaintiff are named jointly; and the fact that he placed the deeds in his safe deposit box over which he had control.

Just before his death T. H. Halleck asked his attorney to institute a suit to cancel the deeds in question. The defendant testified that she decided that the suit should not be brought because she feared that a court appearance by her husband would jeopardize his health. Thereafter he or the defendant called upon two of his friends to come to his bedside for a meeting. At this meeting he asked them to stand by the defendant if the plaintiff claimed the property described in the deeds. At this meeting he also told his friends that the deeds were made to avoid probate and with the idea that he could get the instruments back if he

asked for them. The questions put to these friends had been written out by the defendant at her husband's request prior to the meeting with them. Some of the questions were asked by the defendant herself.

To show that T. H. Halleck would not have reason to make an irrevocable disposition of his property to the plaintiff, the defendant attempted to prove that the relationship between the father and son was not a close one at the time the deeds were executed. The plaintiff had "run away" from home at the age of 17 to join the Army. He had not seen his father for approximately six years immediately prior to the execution of the deeds. The father had stated to a friend that the plaintiff "had never been a son to him." The answer to this contention is found in the correspondence between the father and son. Their letters indicate a mutual affection and an interest in each other's affairs, normally found in the relationship of a father and his mature son. We believe that T. H. Halleck had sufficient motivation to make an inter vivos gift of his property to his son. In two letters written to the plaintiff some time after the deeds were executed, T. H. Halleck stated that he intended "to sell the property." The defendant argues that the plaintiff's failure to assert an interest after receiving such letters constituted evidence of an admission that plaintiff did not regard the deeds as creating an interest in him during his father's lifetime. We think that this carries the theory of admissions against interest beyond its intended application. Along similar lines it is pointed out that T. H. Halleck exercised dominion over the property in question and that the plaintiff did nothing on the property, and made no demand for an accounting with respect to the rents and profits which the property produced during his father's lifetime. If the

deed was intended to and did create a present concurrent interest in T. H. Halleck and the plaintiff with the right of survivorship in each of them, we would regard as entirely normal the plaintiff's conduct in waiving any claim to the profits from property which his father had used as a source of income.

The foregoing constitutes the principal evidence in support of the defendant's position that the delivery of the deeds was not effected. It will be noted that the defendant attempts to disprove delivery largely by attempting to show that T. H. Halleck intended the deeds to operate as a testamentary disposition. For the purpose of disposing of this case on appeal we have acceded to the defendant's request and treated the case as one in equity calling for a de novo examination of the evidence. Much of the above evidence was admitted under the rule. Although some of it was not admissible, we are of the opinion that even though all of defendant's evidence is accepted it is not sufficient to outweigh the evidence of delivery.

In attempting to determine the intent of T. H. Halleck we view the execution of the two deeds as an integral transaction. As already noted, a presumption of delivery arises from the recording of the deed to Bickford. His deed to T. H. Halleck and the plaintiff is in the form commonly used in this state to create a survivorship interest. The fact that the instrument used is in the form of a deed is some evidence that the grantor intended to create a present interest. *Pass v. Stephens,* 22 Ariz 461, 198 P 712 (1921) ; *Beck v. Belcher,* 172 Ga 491, 157 SE 678 (1931) ; *Saunders v. Saunders,* 115 Iowa 275, 88 NW 329 (1901).

However, the plaintiff's claim need not rest on that inference alone. There is other evidence of T. H. Halleck's intent to pass a present interest in the prop-

erty. The strongest evidence of this intent is found in a letter written by him to the plantiff on September 23, 1951, (which was after the execution of the will under which the defendant claims) in which he said, "The property is deeded to us you and I and at my going away becomes yours *and it can't be changed except by deed from you and Clara.* The defendant attempts to explain this statement as follows: The letter, in which this statement was made, was written after T. H. Halleck had consulted his attorney and was informed that he could not recall the deeds. He returned home, informed the defendant of this advice, and said that he had gotten her "into a terrible mess." The defendant testified that he was perturbed by the information he had received from his attorney. It is argued that the fact that he was perturbed indicated that the advice of his attorney was obviously new information to him and that this is evidence that it was contrary to his previous understanding. We view the matter differently. The reference to the property is a part of a friendly and newsy letter which contains no mention of a reconveyance to the father. It seems obvious that T. H. Halleck was reporting his understanding of the operation of the deed and his satisfaction with its legal effect. Other evidence supports this conclusion. In a letter to plaintiff dated January 21, 1952, T. H. Halleck wrote, "I have most of my money affairs fixed up for Frances but all of my property is deeded to the survivor of us when I am gone it is yours without any recourse to law." And prior to the execution of the deeds he wrote to his son as follows:

"When you get here we will fix the title to my real estate just as Litchfield told me to do and as I did with Daisy, [his former wife]—deed the property to Charlie and he records the deed and deeds it

all back to us both. Then whoever lives the longest gets it without going to court."

We are firmly convinced that T. H. Halleck intended to create in himself and his son present concurrent interests with a provision for survivorship.

T. H. Halleck's statements that upon his death the property was to become the plaintiff's are regarded by the defendant as the equivalent of saying that no interest was intended to pass until the father's death. This is not necessarily true; the statements can be interpreted to mean either (1) that no interest is to pass until his death or (2) that a present interest passes but that enjoyment is postponed until his death. We find that the deeds in question were made with the latter intent. The defendant relies upon *Sappingfield v. King,* 49 Or 102, 89 P 142, (1907), 90 P 150, 8 LRA (NS) 1066, where the deed itself contained a provision that it "shall take effect from and after the death of the grantor." It was held that this language indicated the grantor's intent to pass no interest until his death. The contrary conclusion is reached in *Nalley v. First National Bank of Medford et al,* 135 Or 409, 293 P 721, 296 P 61 (1931). But suffice it to say that in this case such language did not appear in the Bickford deed.

 The defendant contends that the deed from Bickford was not effective to pass title to the plaintiff because he did not accept it during the lifetime of T. H. Halleck. There are statements in our cases to the effect that acceptance by the grantee is necessary to vest title in him. E.g., *Lancaster v. May,* as Administrator, 194 Or 647, 243 P2d 268 (1952), noted 32 Ore L Rev 262 (1953). This conclusion has been reached on the ground that a deed is a contract and that acceptance is necessary to the formation of a con-

tract. *Tyler v. Cate,* 29 Or 515, 521, 45 P 800 (1896). But this is erroneous because title may be passed to a grantee who because of nonage or insanity is incapable of acceptance. It is more accurate to regard the conveyance of title as a unilateral rather than as a bilateral transaction. Its unilateral character is uniformly recognized in conveynces by will. There is no reason to treat an inter vivos conveyance any differently for this purpose. The English courts do not. *Thompson v. Leach,* 2 Ventris 198 (1691), *Mallot v. Wilson,* [1903] 2 Ch 394. Our cases have achieved substantially the same result by holding that acceptance is supplied through a presumption that a conveyance beneficial to the grantee is accepted. The presumption is applied even in the face of the fact that the grantee did not know of the deed or because of mental incapacity could not legally accept the title. To presume as true that which is known to be false creates an unneeded fiction in this part of our law.

▮ The same result can be arrived at directly by eliminating the requirement of acceptance in stating the operative facts necessary to transfer title. If it should occur that the vesting of title in the grantee is not beneficial to him or for some reason he does not wish to retain it, he may disclaim and revest the title in the grantor. American Law of Property, § 12.70; Tiffany, Real Property (3d ed) § 1055-1061; *Garfield v. White,* 326 Mass 20, 92 NE2d 575 (1950). See also, Simonton, Transferring Title to Land By Deed, 36 W Va L Rev 343, 346-349 (1930). This appeals to us as the sounder approach and we hereby adopt it. Therefore, acceptance was not necessary to vest title in the plaintiff.

In addition to relying on the evidence previously set forth the defendant takes the position that because

T. H. Halleck wished to avoid probate and executed the deeds as the substitute for a disposition by will that it is necessarily testamentary. But the law affords the owner of property a number of effective devices other than a will by which he can postpone the enjoyment of property until his death. He may set up a revocable trust, *Allen v. Hendrick,* 104 Or 202, 206 P 733 (1922); he may irrevocably place a deed in the hands of a third person with instructions to deliver it to the grantee upon the grantor's death, *Reeder v. Reeder,* 50 Or 204, 91 P 1075 (1907), *Norton v. Norton,* 105 Or 651, 209 P 1048 (1922); he may deliver a deed to the grantee expressly reserving a life estate, *Deckenbach v. Deckenbach,* 65 Or 160, 130 P 729 (1913); he may deliver a deed to the grantee expressly providing that it shall not be effective until the grantor's death, *Nalley v. First National Bank of Medford,* 135 Or 409, 293 P 721, 296 P 61 (1930). See also 30 Harv L Rev 508 (1917). By these, and other devices a nontestamentary disposition can be made. The fact that the owner desires to avoid the execution of a will does not render void his attempt to use a legitimate substitute. This is brought out clearly in *National Shawmut Bank v. Joy,* 315 Mass 457, 53 NE2d 113 (1944), where the court said:

> "In some cases in this court it has apparently been thought of consequence that the settlor sought to avoid making a will, or to 'evade' or 'circumvent' the statutory requirements for a will, or to make a disposition of his property that would make a will unnecessary and in a popular sense would be a substitute for a will. We deem such considerations immaterial. The law prohibits only an unattested disposition that takes effect in a testamentary manner. If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his prac-

tical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial. Perry v. Cross, 132 Mass. 454. Greeley v. O'Connor, 294 Mass. 527, 533. Nichols v. Emery, 109 Cal. 323, 331, 332. Bear v. Milliken Trust Co., 336 Ill. 366, 384, 73 Am. L. R. 173, 187. Scott, Trusts (1939) § 57.1. Bogert, Trusts (1935) § 103, page 332. Scott, 43 Harv. Law Rev. 521, 528. Leaphart, 78 Univ. of Pa. Law Rev. 626." 315 Mass 457, 471, 53 NE2d 113, 122. See also *Argile v. Fulton,* 295 Ill 569, 129 NE 526 (1920); Ballantine, When Are Deeds Testamentary?, 18 Mich L Rev 470 (1920); Keegan, Deeds in Lieu of Wills, 16 A.B. A.J. 779 (1930).

■ It is next urged that there was no consideration for the deed. It is not clear from the defendant's brief why this is regarded as rendering the conveyance ineffective. Consideration is not necessary to make an effective transfer of an interest in land. In *Lambert v. Smith,* 9 Or 185 (1881), it was held that a bargain and sale deed is void if consideration is not recited or proved. This accurately expressed the rule at common law. We think now that it was not necessary to perpetuate this archaic ceremony of the English law. It is not necessary for us to treat the form of deeds now in use as having their origin in the common law. ORS 93.010 provides as follows:

"Conveyances of lands, or of any estate or interest therein, may be made by deed, signed by the person of lawful age from whom the estate or interest is intended to pass, or by his lawful agent or attorney, and acknowledged or proved, and recorded without any other act or ceremony."

We regard this statute as authorizing the conveyance of land without recitation or proof of consideration.

To the extent that *Lambert v. Smith,* supra, is to the contrary it is overruled.

We now turn to a consideration of the legal effect of the deed naming T. H. Halleck and Theron H. Halleck, the plaintiff, as grantees. The granting clause of the deed is as follows:

> "KNOW ALL MEN BY THESE PRESENTS, That I, Charles A. Bickford, a single person, in consideration of ----TEN---- Dollars, to ME paid by T. H. Halleck and Theron H. Halleck do hereby grant, bargain, sell and convey unto said T. H. Halleck and Theron H. Halleck not as tenants in common but with the right of survivorship, their assigns and the heirs of such survivor, all the following real property, * * *."

The habendum reads:

> "To have and to Hold the above described and granted premises unto the said T. H. Halleck and Theron H. Halleck their assigns and heirs of such survivor forever. Provided, however, that the grantees herein do not take the title in common but with the right of survivorship; that is, that the fee shall vest absolutely in the survivor of the grantees."

As already noted, the deed is a standard form widely used in this state. The form adopts the language in the deed which was before the court in *Erickson v. Erickson,* 167 Or 1, 115 P2d 172 (1941). We should therefore, be able to determine the nature of the interest created in T. H. Halleck and the plaintiff by reference to that case. We regard the Erickson case as holding that the estate known at the common law as a joint tenancy is abolished by ORS 93.180 and that the limitation in the deed in that case created concurrent interests for life with contingent remainders

which would vest in the survivor. Cf., 21 Ore L Rev 159 (1942).

 The defendant argues that the latter interpretation cannot be sustained because the limitation does not create life estates and therefore there is no particular estate upon which the contingent remainder can be supported. The argument can be of little aid to the defendant, for if the present interests which the grantees had during their joint lives are not regarded as life estates, such interests would be concurrent present estates in fee simple and the future interest created by the survivorship provision would, therefore, be executory interests. We are of the opinion, however, that the limitation should be construed as creating by implication concurrent estates for life with contingent remainders which will vest in the survivor. We hold that a joint tenancy, as distinguished from the interests just described, cannot be created in this state. ORS 93.180 clearly abolishes the estate in joint tenancy and it must be given effect. The legal consequences in so holding are important. One of the incidents of the estate in joint tenancy is the power of either co-tenant to sever the joint estate, i.e., the power to convert the joint tenancy into a tenancy in common by either joint tenant conveying his interest to a third person. *Erickson v. Erickson,* supra; American Law of Property, § 6.2; Tiffany, Real Property (3d ed), § 425. Thus, if the deed in the case at bar created a joint tenancy in T. H. Halleck and the plaintiff, the deed executed by T. H. Halleck to the defendant would have resulted in creating a tenancy in common in fee simple in the defendant and plaintiff.

 But this power to defeat the survivorship interest does not extend to co-tenants who hold concurrent

life estates with contingent remainders. The contingent remainder which each co-tenant has cannot be defeated by any act of his co-tenant. It has been held in this state that a contingent remainder may be destroyed by merging the life estate with the reversion in fee simple. *Love v. Lindstedt,* 76 Or 66, 147 P 935 (1915). But assuming that one of the co-tenants did merge his life estate with the reversion, it would be impossible to work a destruction of the contingent remainder in a case such as we are considering here because the life estate of the nonconveying co-tenant would continue to support his contingent remainder.

We reach the conclusion then, that a deed in the form used in the case at bar created indestructible contingent remainders in the co-tenants who were vested with concurrent life estates. The deed which T. H. Halleck delivered to the defendant operated only to convey his life estate and his contingent remainder and upon his death the fee simple estate was divested from Charles A. Bickford and vested in the plaintiff. This was the conclusion reached by the lower court. We think that it is sound. The trial judge also awarded the plaintiff $950 as damages for the deprivation of possession of the property for a period of nineteen months. This was a reasonable award. The judgment is affirmed. The plaintiff is entitled to his costs.